## TATUM v. HARTFORD FIRE INS. CO.

(District Court, W. D Louisiana. October 10, 1924.)

No. 1437.

1. **Insurance** ⊛131(1) — **Verbal contract to issue policy held binding.**

Defendant insurer, through its agents, solicited plaintiff to carry builder's insurance, to which she assented, and a temporary policy was issued. Later, as the building progressed, she was again solicited to increase the insurance, and promised to notify the agents of the amount she was willing to carry, which she did; the amount being within that offered. It was the custom of the agents to retain policies issued in their office unless called for, and plaintiff supposed her policy was so retained until after loss by fire, when she was informed that the agent had neglected to issue it. *Held*, that her acceptance of the offer created a binding contract, and that defendant was liable.

2. **Insurance** ⊛282(4)—**Builder's risk policy held not invalid because insured was not the unconditional owner of the property.**

That under the standard form prescribed by a state statute a policy is void if insured is not the unconditional owner of the property *held* not to invalidate a builder's risk policy in usual form, because the building contractor had an interest in the property, which was recognized and protected by a loss payable clause.

At Law. Action by Mrs. Marguerite L. Tatum against the Hartford Fire Insurance Company. Trial to court, and judgment for plaintiff.

Barksdale, Clark & Van Hook, of Shreveport, La., and Bullock & Warren, of Ruston, La., for plaintiff.

Alex Smith, of Shreveport, La., for defendant.

DAWKINS, District Judge.    Plaintiff filed in the state court for Bienville parish the present suit to recover for the loss by fire of a certain frame building situated in the town of Gibsland; the pertinent allegations of the petition being in substance as follows:

That she had entered into a contract for the construction of a certain building at a cost of $10,725, and that shortly thereafter the defendant, Hartford Fire Insurance Company, though its agents, Gibsland Insurance Agency, W. L. Hamner, Manager, "solicited from petitioner the insurance on said building, and that petitioner entered into an agreement with defendant, Hartford Fire Insurance Company, through said Gibsland Insurance Agency and said W. L. Hamner, manager, to insure said property, and that defendant, through its said agency, should keep the property insured against loss or damage by fire during the process of construction, that policies should be issued thereon in increasing amounts in proportion to the value of the building as the work of construction progressed," and that, in accordance therewith, a policy was issued on June 21, 1922, for $2,500, to partially cover the interest of petitioner up to August 21, 1922.

That while still in process of construction, "on or about September 26, 1922, the defendant Hartford Fire Insurance Company, through its special agent, R. P. Luther, and its said local agent, W. L. Hamner, made a special inspection of said building and solicited petitioner to take out a fire policy thereon in the sum of nine thousand dollars ($9,000).    That petitioner took under advisement the proposition thus made by the special and local agents of the defendant company, and during the next day called at the office of said Gibsland Insurance Agency and said W. L. Hamner to accept the proposition and authorize the issuance of a policy to her in the sum of eight thousand dollars ($8,000), and that, said Hamner being out of his office, petitioner returned to her office and went again once or twice to see said Hamner, and finally on September 29, 1922, petitioner went again to the office of said Gibsland Insurance Agency and said W. L. Hamner, and, again finding said Hamner out, petitioner wrote out and left in the

office and on the desk of said Hamner written acceptance of defendant's proposition to insure the building and request for the issuance of a policy in accordance with their proposition in the sum of eight thousand dollars ($8,000), that said written acceptance and request for issuance of policy, which is now in possession of the defendant company, or its agent, said W. L. Hamner, was in words and figures as follows, to wit:

" 'Gibsland, La., September 29, 1922.

" 'Mr. W. L. Hamner:  Please write policy on my hotel building for amount of $8,-000.    I called at your office and you were not in; so leave this note, so you attend to it when you come in.

" 'Mrs. M. L. Tatum.'

"That said written acceptance and request for issuance of policy was duly received by the said W. L. Hamner, agent, on his return to his office, and was accepted by him on behalf of the defendant company as an acceptance of the proposition made by him and the said R. P. Luther, special agent, and that it was the intention of the said W. L. Hamner, agent, then and there promptly to issue said insurance policy in the sum of eight thousand dollars ($8,000) to petitioner for and on behalf the defendant company. That through no fault of petitioner, and for some cause unknown to petitioner, the said Gibsland Insurance Agency and the said W. L. Hamner neglected promptly to issue said policy, and that petitioner, knowing that said W. L. Hamner had received said written acceptance and request for issuance of policy, assumed and believed that said policy had been promptly issued and had been retained for her by said Hamner in his safe for future delivery, as was his custom in such cases, and that petitioner did not know of the neglect and failure of said Gibsland Insurance Agency and said Hamner to promptly issue said policy until the morning of October 3, 1922, after said building had been destroyed by fire, at which time said Hamner came to petitioner and notified her that he had neglected to issue said policy immediately, as he had intended to do, and that said policy had not issued up to the time of the fire."

Petitioner further alleged that the said building was about 75 per cent. completed at the time of the fire, but that the actual value thereof was in excess of $10,000, and that defendant, Hartford Fire Insurance Company, justly and legally owes petitioner $8,000, the amount of the policy of insurance accepted and agreed to be written by it through its special and local agents as

aforesaid; that proper notice and demand had been given without avail. The prayer was for judgment in the sum of $8,000.

The case was promptly removed to this court upon the ground of diversity of citizenship. Thereafter defendant answered, denying the material allegations of the petition, and, pleading in the alternative, averred that, if the policy had been issued, it would be null and void for the reason that, under the standard Louisiana form, if the interest of an assured is other than unconditional owner, the insurance is without effect; that the interest of the defendant in said property was not that of unconditional owner, because of the fact that she had entered into a contract with one Andrews for furnishing the material, labor, etc., to construct the building, which had not been completed and delivered, so as to vest in her complete ownership    Defendant prayed that plaintiff's demands be rejected at her cost. Trial by jury was waived in writing, and the matter has been submitted to the court for judgment.

## Opinion.

Defendant filed an exception of no cause of action, but, inasmuch as a determination thereof involves the same issues as a decision of the case, the exception is referred to the merits. In support of her allegations, plaintiff has shown the following facts:

About the 1st of May, 1922, she entered into a contract for the construction of the building to cost $10,725, and on May 31st of the same year the general agent of defendant, at Atlanta, Ga., wrote to its local agents at Gibsland, where the building was constructed, as follows:

"Atlanta, Ga., May 31, 1922.

"Gibsland Insurance Agency, Agents, Gibsland, La.—Gentleman: Our information is to the effect that Mrs. M. L. Tatum will erect store and hotel building on First North street. This appears to us to be desirable business, and if you find that such is the case we hope that you will be able to secure this line for the Hartford.

"Yours very truly,

"JAS–f   W. R. Prescott, General Agent."

The matter was taken up with the plaintiff by the local agent and the special representative of the defendant, with whom it was agreed that the property should be kept insured during the course of construction. Accordingly a policy for $2,500 was issued on June 21, which expired August 21, 1922. Nothing further was done until the latter part of September, when this same special

agent came to Gibsland, and in company with W. L. Hamner, manager of the local agency, representing the defendant, inspected the building and authorized insurance to the extent of $9,000. As to what happened thereafter, plaintiff, who is not contradicted, but corroborated by Hamner, the local agent, testified as follows:

"Q. Do you know whether or not they had made a special inspection of that building? A. They said that they had made a thorough inspection of the building before calling on me at my office.

"Q. What did you tell them with reference to taking out a policy for $9,000? A. That I would check up on the building and see just how much it would cost.

"Q. What did you tell them with reference to letting them know about this insurance? A. That I would let them know later, in a few days, the amount.

"Q. At that time, state whether or not the first policy for $2,500 expired? (Objection. Ruling of the court.) A. Yes, sir. (Objection, and ruling of court made general.)

"Q. What did you do with reference to notifying Mr. Hamner of the amount of insurance you wanted, or what did you do? A. Well, later, after getting the statement from Mr. Anderson and checking up on the amounts, etc., I called on Mr. Hamner at his office. He was not in there, and I called again and he was not in, and I called three or four times and he was not in, and I left a written notice on his desk to write me a policy.

"Q. You say you left a written notice on his desk in reference to this insurance? A. I did.

"Q. Examine document marked 'P–3' and state if that is the document which you left on his desk? A. It is.

"Q. That is the document to which you refer? A. Yes, sir.

"Q. That you left on his desk? A. Yes, sir.

"Q. Was this document left on Mr. Hamner's desk on the day on which it was written? A. It was.

"Q. When did this building burn? A. On the morning of the 3d of October, 1922.

"Q. 1922? A. Yes, sir.

"Q. You will have to speak a little louder. What time of the morning did the building burn, or what time of day? A. Well, it was after 12 o'clock at night and before daylight when it burned down. It was practically burned up by daylight. I don't know just the hour.

"Q. Did you or not think that this insur-

ance had been written at the time of this fire? A. Yes, sir.

"Q. When was the first time that you knew, that you found out, that the policy had not been issued? A. About 8 o'clock the morning of the 3d of October, after the fire.

"Q. How did you find it out? A. Mr. Hamner called on me at my office. (Objection. Ruling of the court.)

"Q. You mean that he called you over the phone? A. Called on me at the office.

"Q. In person, you mean? A. Yes, sir.

"Q. All right. What did he say to you? A. He said that he had not issued the policy, but that he had received the notice to issue the policy.

"Q. And that was the first that you knew that the policy had not been issued? A. Yes, sir."

The record otherwise discloses that it was the custom of the local agency, which represented the defendant and some three other insurance companies, to retain in its safe the policies of 90 per cent. of its clients, and I think it conclusively established that, in the light of what had transpired, Mrs. Tatum felt perfectly secure in the belief that her property had been covered and the policy issued. The written request, bearing date September 29, 1922, for issuing the policy, was produced and filed in evidence, and reads as follows:

"Gibsland, La., September 29, 1922.

"Mr. W. L. Hamner: Please write policy on my hotel building for amount of $8,000. I called at your office, and you were not in; so leave this note, so you will attend to it when you come in.

                    "Mrs. M. L. Tatum."

The building was destroyed by fire early on the morning of October 3d. Demand was made upon the representative of the company at Shreveport and liability denied. The policy never having been issued, plaintiff takes the position that the insurance became effective by the offer to insure through the local and special agents of defendant company and her acceptance under the circumstances above indicated, and that liability therefor arises as in contract, notwithstanding the said failure to actually issue the policy.

[1] The position of the defendant on the question of liability vel non is twofold: First, that there was never any definite offer and acceptance in specific terms, such as to constitute a contract of insurance; and, secondly, that, granting the terms and conditions were agreed upon orally, it was con-

templated that the contract should be reduced to writing, and, this not having been done, the transaction was never completed.

On the first proposition, I am of the view that the evidence establishes a full and complete agreement. In the first place, this insurance was sought by this particular company through its general, special, and local agents, and there is no question as to selection of a company for covering the risk. The special representative of the defendant company, both on the occasion of the issuance of the first policy, and immediately preceding the fire, had visited the premises, made an inspection, and authorized the issuance of insurance. The first policy was issued and is in evidence, showing all of the terms, conditions, rates, etc., as well as the form of policy defendant used on risks of this nature, and I think it reasonably established that the same kind of policy was to cover the second risk; so that the only item to be inserted, different from the former contract, was the amount of insurance. The defendant company, through its proper representative, having authorized insurance to the extent of $9,000, and the plaintiff having indicated a purpose to promptly advise the amount of insurance which she would require, and this having been done in the manner heretofore recited, I do not think it was necessary that the local agent thereafter formally communicate to her the fact of acceptance of the risk. In other words, I am convinced that the proposition of defendant company, through its representatives, was such that Mrs. Tatum was allowed to determine the amount of insurance which she wished to carry, and that the defendant would accept her application and issue a policy on the same terms and conditions as the former one for whatever amount she might request.

On the second point of the defense, I do not believe the rule of law relied upon by the defendant is applicable. Insurance contracts fall within a peculiar class, and are covered by the laws of insurance, rather than the rules of ordinary agreement. The practice of covering insurance risks immediately through telephonic or telegraphic request has become of such uniform practice that I think the courts are justified in taking cognizance thereof. If this were not the rule, much of modern business and commerce would be seriously handicapped, if owners were unable to have their property covered by insurance until the actual issuance and delivery of a written policy. Thousands of transactions of this nature

occur daily throughout the country, and upon the point as to whether insurance can become effective until the actual issuance of the policy I quote from the following authorities:

"While the usual course of dealing is otherwise, negotiations for an insurance contract may be initiated by the insurer offering to insure on certain terms, and where this is the case the contract is complete on the acceptance of the offer by the person proposed to be insured." 14 R. C. L. p. 897, § 74.

"The acceptance of the offer or application completes the contract and binds the insurer although the policy has not been issued or delivered." 26 C. J. 64, and authorities cited in footnote.

"The contract of insurance need not be a specialty nor even in writing, for it is well-settled law that a parol contract of insurance is valid in the absence of a statutory requirement or other positive regulation to the contrary, and this rule covers not only agreements to insure, but the completed contract. * * * A parol contract by a duly authorized agent of an insurance company is binding on the company before issuing the policy." Joyce on Insurance, § 31.

"The company may be bound by an oral contract of insurance or an oral agreement to insure and by the weight of authority such contracts are valid; so an agent intrusted with blank policies, signed by the president and secretary, with authority to negotiate, fill up, and issue the same, may bind the company by a parol contract to insure, and an agent authorized to make the necessary surveys, and negotiate and conclude all the terms of the contract and to fill up and countersign the policy, may bind the company by a parol contract to issue a policy. So an unrestricted authority to negotiate a contract of insurance by issuing a policy includes authority to make a valid preliminary contract for such insurance. * * * And a local agent of a foreign company, with similar authority, may bind the company by parol to contracts of original or renewal insurance. Again, a person who for years has been held out as the general agent of an insurance company, with full power to negotiate contracts of insurance, is authorized to make a preliminary contract of insurance to be consummated by a subsequent filling up and delivery of a policy. So it is well settled that an agent, with power to solicit insurance, accept risks, agree upon and settle the terms of insurance, and to issue and renew policies, has the authority to make a preliminary parol contract, binding on his principal, either to issue or renew a policy about to expire. And an agent with similar powers may validly contract by parol, memorandum or binding slip. So an agent authorized to bind the company pending correspondence concerning the policy may make a valid parol contract to insure." 2 Joyce Ins. § 525; Western Assurance Co. v. McAlpin, 23 Ind. App. 220, 55 N. E. 119, 77 Am. St. Rep. 423.

"A company, bound in good faith to furnish a policy in the usual form and with the usual clauses, cannot escape liability by its neglect to do so." Bradley v. Nashville Ins. Co., 3 La. Ann. 708, 48 Am. Dec. 465. See note in Ann. Cas. 1916B, 678; Duffie v. Bankers' Life Association, 160 Iowa, 19, 139 N. W. 1087, 46 L. R. A. (N. S.) 25.

From the above citation of authorities, I think it sufficiently appears that the facts proved by this record establish an agreement complete within itself to bind the insurance company for the loss.

[2] Taking up, now, the question raised in the alternative defense; that is, granting that an oral contract of insurance had been established, the same would be without effect, for the reason that the plaintiff was not the unconditional owner of the property, as required under the standard form provided by the state statute. In answer to this contention, it is sufficient to say that the record reasonably discloses the purpose of the parties to issue and accept a policy of the same kind and character as that first issued; that is, a builder's risk contract in favor of Mrs. Tatum, with loss payable clause to the contractor, and which, on its face, would indicate clearly the nature of the interest of all parties concerned. I am not confronted with the question of any right or claim on behalf of the contractor in this case. He is no party to this suit, and so far as the record advises is asserting no rights under the contract of insurance.

The proof establishes that the loss exceeded by some $2,000 or $3,000 the amount of the policy, and, taken all in all, I think the plaintiff is entitled to recover. For the reasons assigned, it is adjudged and decreed that the plaintiff, Mrs. Marguerite L. Tatum, have and recover judgment against the defendant, Hartford Fire Insurance Company, in the full sum of $8,000, with 5 per cent. per annum interest from judicial demand until paid, together with all costs of suit.