CATHERINE E. DUFFIE, Appellant, v. BANKERS' LIFE ASSOCIATION OF DES MOINES, IOWA.

**Insurance:** DELAY IN ACTING UPON APPLICATION: NEGLIGENCE. It is 1 the duty of an insurance company to act promptly on an application for insurance, and to notify the applicant of its action; and ·where the company, either directly or through its agents, is negli-

gent in this respect, it cannot avoid· responsibility by the fact that the application had not been received and acted upon prior to the applicant's death; especially where it had been informed of the taking of the application. Evidence held to require submission of defendant's negligence in unreasonably delaying action.

**Same:** NEGLIGENCE OF INSURED. Where an applicant for insurance had done all that was required of him to effect the contract, and had been assured by the agent of the company that it would be in force from the date of the medical examination, he had the right to assume that the application would be forwarded without delay, and that he was insured; so that it cannot be said as a matter of law that he was negligent in failing to make inquiry as to the cause of delay in issuing the policy, or in not withdrawing his application.

**Same:** DELAY IN PASSING UPON APPLICATION: LIABILITY OF COMPANY. It will be assumed that an insurance company will accept a risk if advantageous to it, and if fairly and honestly contracted for. So that where the applicant was a young man, whose character was good and whose employment was not hazardous, and his medical examination was satisfactory and approved by the physician, the question of whether his application would have been accepted and the policy issued, except for the unreasonable delay in passing on the application, was for the jury.

**Same.** There is a distinction between insurance contracts and those between individuals, in that an insurance company acts under a franchise from the state and the state regulates and supervises its business; and having solicited and obtained an application, and received payment of all fees or premiums exacted, it is bound in the discharge of its duty to either furnish the insurance or decline the risk within a reasonable time, and in failing to do so is liable for the loss.

**Same:** ACTION: PARTIES. An action for the negligent failure of an insurance company to pass upon an application and issue the policy prior to the death of the applicant must be brought by the personal representative of the deceased, and not in the name of a proposed beneficiary.

*Appeal from Poweshiek District Court.*—HON. BYRON W. PRESTON, Judge.

ACTION for damages resulted in a directed verdict for defendant and judgment thereon. The plaintiff and intervener appeal. *Affirmed* in part and *reversed* in part.

*Bray & Shifflet* and *O. M. Brockett,* for appellant.

*I. M. Earle,* for appellee.

LADD, J.—The plaintiff is the widow of Joseph M. Duffie, who departed this life July 9, 1911. He had applied to the defendant association on June 8th preceding for a certificate of membership therein, stipulating the payment of an indemnity of $2,000 upon his death; but the association had failed to accept or reject the application, and, in this action, recovery of that amount as damages is sought by plaintiff, who was named as proposed beneficiary in the application, on the ground "that defendant negligently failed to take any action upon said application before the death of said Joseph M. Duffie and negligently failed either to issue to him a certificate of insurance as provided for therein or to reject said application and give him notice thereof in sufficient time to enable him to procure other insurance," and, in consequence of such negligence, she was deprived of the benefit of the insurance. The widow, as a duly appointed and qualified administratrix, filed a petition of intervention, wherein she prayed judgment for damages to the estate of deceased on the grounds:

That defendant's said agent carelessly and negligently failed to send the application of said decedent to the home office of the defendant association after he had been examined by defendant's examining physician at Tama, Iowa; that, in consequence of such negligence on the part of said agent, no policy or certificate of life insurance was issued to said applicant by the defendant association; that, if said application had been forwarded by said agent to the home office of the defendant association as soon as said applicant was examined by defendant's examining physician at Tama, Iowa,

the defendant association would have issued and delivered a policy or certificate of life insurance for $2,000 to said applicant before he died, and such insurance would have been in force at the time of his death.

At the conclusion of plaintiff's evidence, the court directed a verdict for the defendant, and this is the only ruling of which complaint is made.

The facts admitted or proven on the trial first should be stated. The defendant is a mutual assessment insurance association. T. P. Rogers, at the time in question, was its general agent, and had authority from the association to take the application and receive the notes hereinafter mentioned. Duffie's application for membership in the association closed in words following:

I agree to accept the certificate of membership issued hereon and that the same shall not take effect until said certificate (signed by the secretary or assistant secretary) is issued and received by me during my continuance in good health. This application and the certificate issued thereon, together with the articles of incorporation and by-laws (not reducing the insurance provided) which may be hereafter adopted, shall constitute the agreement or contract between me and the said association. I certify that I have carefully read the foregoing application. [Signature of the applicant in his own handwriting] Joseph M. Duffie.

This was at the date mentioned, and at the same time the applicant executed to Rogers his promissory note for $17 as membership fee required to be paid when making such application, and delivered to Rogers a guarantee deposit note for $34 required by the articles of corporation and by-laws of defendant. For these Rogers gave Duffie a receipt in the words following:

The Bankers' Life Association of Des Moines, Iowa. I have this day taken the application of Mr. J. M. Duffie of Tama, Iowa, for $2,000 insurance in the Bankers' Life Association, upon which he has given his guarantee note for $34.00

and paid in cash January 9, 1912, $17.00, all of which is to be returned promptly if the application is declined. The first quarterly payment on the insurance applied for will be due January 31, 1912. T. P. Rogers, Solicitor. Dated at ......., June 8, 1911.

On the back of the receipt this appears:

Agents should not promise that certificate will be issued in less time than is reasonably assigned to do the work, as disappointment may result, especially as frequently occurs, an extra amount of business come in a bunch. The home office does all it can to expedite the issue and the agent can add material help if he will see that all applications are properly completed and full information given. If delay is unusual write for cause.

Rogers informed Duffie at the time that he could go to the office of Dr. Thompson within a day or two for examination, and the application would then be sent to the association and explained to him; that the notes would be returned if the applications were rejected. To this inquiry as to how soon the insurance would be in force, Rogers responded, "Upon the passage of the physical examination required by their physician." Rogers left the application with Dr. Thompson on the same day, and two days later Duffie called and was examined by that physician, who informed the applicant that he had passed a satisfactory examination and that he (the doctor) had recommended him for membership of the association.

As required by defendant's rules, the physician mailed to Dr. Will, medical director of defendant, on the same day, a slip of paper signed by him showing that he had made the medical examination of Duffie, and this reached defendant's office June 12, 1911. Rogers had been in the habit of calling at Thompson's office for the application with the examination, and the doctor left these on the desk for him, where it remained until he learned that Duffie had drowned, whereupon the physician mailed them to defendant. The medical exami-

nation disclosed that Duffie, who was thirty-two years of age, was in fine physical condition. He is conceded to have been a man of good habits, good financial ability, and of good moral character. He had done all that was required of him to obtain the insurance. The defendant was actively engaged through its agents in soliciting members of the association to whom certificates of insurance might be issued, and on an application of one Herman, procured by Rogers, June 5, 1911, defendant issued a certificate June 24th following. The defendant paid the $17 note out of its funds and caused it to be canceled July 28, 1911, after the association had been advised of the claim now made against it in this action, and it tendered the surrender of the guaranteed deposit note.

It is to be observed that the petition does not proceed on the theory that from the retention of the application and unreasonable time without acting thereon acceptance of the application is to be presumed, nor on the theory that defendant is estopped from denying such acceptance because of having misled the applicant in some way. See *Winchell v. Iowa State Ins. Co.*, 103 Iowa, 189. The action is not based on contract either express or implied, but solely on tort; the theory of the plaintiff being that, having solicited and received the application for insurance, it owed the applicant the affirmative duty either of rejecting the application or of accepting it within a reasonable time, and upon breach of such duty it is liable for all damages suffered in consequence of such breach. Let us first ascertain whether the evidence was sufficient to carry the issues involved in such a claim to the jury.

I. Might defendant have been found to have been negligent? The association was responsible for the conduct of Rogers when acting within the scope of his agency, and it is admitted that he allowed the application to lie on the physician's desk a month lacking a day, though it was his duty to forward it promptly to the association. But he was not alone

1. INSURANCE: delay in acting upon application: negligence.

at fault, for the association was aware as early as June 12, 1911, that the application had been taken, and yet did nothing in the matter during the twenty-seven days intervening his death.   In the case of another application taken at about the same time and in the same vicinity there was a delay of but nineteen days in issuing the certificate.  We think whether defendant in the exercise of ordinary diligence should have passed on the application prior to Duffie's death was fairly put in issue.   The association was bound by the acts of its agents and chargeable with any consequences that resulted from the failure of Rogers to promptly forward the application and physician's report.   In other words, if the association was under a duty to promptly act on the application and notify Duffie, as we think it was, it cannot shield itself from the responsibility by the fact that the application and medical report had not been received by it and therefore it could not act.   See *Northwestern Mutual Life Ins. Co. v. Neafus,* 145 Ky. 563 (140 S. W. 1026, 36 L. R. A. (N. S.) 1211).   The possession of these by its agent had the same effect as if they were in the possession of the association at its home office.   Assuming then that the application and medical report had been promptly forwarded by the agent, and that the application was not accepted or rejected within the time intervening prior to his death, it seems manifest that whether this was an unreasonable delay was for the jury to determine, and we so hold.

II.   But it is argued that it was as much the duty of the applicant to inquire as it was that of the insurer to give the information, and this or similar expressions

2. SAME: negligence of insured.

will be found in several decisions holding that mere silence on the part of the insurer is not as strong evidence of acceptance as of rejection. Whether this were so or not, as bearing on whether an acceptance should have been inferred, it cannot be said that the duties of the parties were reciprocal.   The applicant had done all he could or was required to do in the matter.   He had the

right to assume that the application would be forwarded immediately after the medical examination and was so assured. This, with the suggestion that the certificate would be in effect after passing the physical examination, was well calculated to lull him into supposed security. Moreover, about all he could have done was to withdraw his application and apply to another insurer for a policy, and this, one who has applied to a company of his choice would quite naturally hesitate to do. Under the circumstances, it cannot be said, as a matter of law, that the deceased was at fault in not stirring defendant to action by inquiry as to the cause of delay or in not withdrawing his application. At the most, this also was an issue appropriate for the determination of the jury.

III. Assuming then that the defendant was negligent, and Duffie without fault as the jury might have concluded, can it be said that but for such negligence a certificate of insurance would have been issued? We think the jury might have found that, in all reasonable probability, had the association passed upon the application, it would have been accepted. Duffie was a young man of thirty-two years, his medical examination was satisfactory, and the physician had recommended him; his employment as a farmer was not hazardous, and his character all that could be desired. The association was actively soliciting members, and it seems to us that the record leaves little if any doubt but that, had the association ever passed on the risk, it would have been accepted and the certificate issued. As observed in *Continental Ins. Co. v. Haynes,* 10 Ky. Law Rep. 276: ''It is to be assumed that the company will accept the risk if advantageous to it, which it must be, if fairly and honestly contracted for, because that is the business in which it is engaged, and that is the object for which its agent acted; and therefore to allow it, under the reservation of the right to approve, to reject simply because a loss has occurred, would destroy the

*3. SAME: delay in passing upon application: liability of company.*

mutuality of the contract and inflict upon the party the misfortune he had provided against."

Contingencies might have arisen, as suggested by counsel for appellee, which would have led to a different conclusion, as, upon inquiry, it might have been ascertained that the applicant was so venturesome or reckless in his conduct as to render him an undesirable risk. It is enough to say that the record contains no intimation that such was the fact, and it ought not to be inferred that other than the truth would have been elicited by any inquiries which the insurer might have prosecuted. If the applicant was of such disposition or temperament that the association would not, if it had acted, have accepted the application and issued the certificate, then no injury can be said to have resulted from the delay. Whether or not in all reasonable probability the certificate would have been issued had the association acted on the application can only be determined from the record as presented to the court.

But it is said that a certificate or policy of insurance is simply a contract like any other, as between individuals, and that there is no such thing as negligence of a party in the matter of delay in entering into a contract. This view overlooks the fact that the defendant holds and is acting under a franchise from the state. The legislative policy, in granting this, proceeds on the theory that chartering such association is in the interest of the public to the end that indemnity on specific contingencies shall be provided those who are eligible and desire it, and for their protection the state regulates, inspects, and supervises their business. Having solicited applications for insurance, and having so obtained them and received payment of the fees or premiums exacted, they are bound either to furnish the indemnity the state has authorized them to furnish or decline so to do within such reasonable time as will enable them to act intelligently and advisedly thereon or suffer the consequences flowing from their neglect so to do. Otherwise the applicant is unduly delayed in obtaining the insurance he desires, and for

4. SAME.

which the law has afforded the opportunity, and which the insurer impliedly, has promised, if conditions are satisfactory. Moreover, policies or certificates of insurance ordinarily are dated as of the day the application is signed, and, aside from other considerations, the insurer should not be permitted to unduly prolong the period for which it is exacting the payment of premium without incurring risk. What was said in *Northwestern Mutual Life Ins. Co. v. Neafus,* 145 Ky. 563, (140 S. W. 1026, 36 L. R. A. (N. S.) 1211), is pertinent:

If in this case there was evidence that the company was induced to reject the application for the sole reason that Neafus died before it acted upon it, or to show that his application, except for the fact of his death, would have been approved, we would have a very different question. We think there is a sound and a well-defined distinction between a case in which the application under no circumstances would have been accepted and a case in which it would have been accepted, except for the fact that the applicant died before it was acted upon, and after the company had a reasonable time in which to act. While the application and receipt are to be treated merely as a proposal for insurance that it is with the company at its election to accept or reject, it may well be said that the company must act honestly and fairly on the application submitted to it, and which it impliedly at least agreed to accept, if satisfactory to it; and that if an application is satisfactory, and the company, if it had acted in a reasonable time, would have accepted the risk, it should not be allowed after holding the application for an unreasonable time to reject it, solely because of the death of the applicant. But, treating the case as we find it in the record, the delay, however unreasonable it may have been, cannot be construed into an acceptance of an application that no well-managed company, in the ordinary course of its business, would have accepted.

In *Boyer v. State Farmers' Mutual Hail Ins. Ass'n,* 86 Kan. 442 (121 Pac. 329, 40 L. R. A. (N. S.) 164), recovery for the amount of insurance applied for was awarded because of negligent delay in not issuing the policy until after the loss, and in a note to the case as reported in 40 L. R. A. (N. S.)

164, the annotator says that: "Whatever may be the decision of the jury on this question (delay), it cannot be doubted that the proposition that an insurer should be held liable for a loss sustained by an applicant for insurance because of the negligence of the insurer's agent in failing to forward the application within a reasonable time is sound."

In *Walker v. Farmers' Ins. Co.*, 51 Iowa, 679, the trial court instructed the jury that, if the agent had only the power "to receive and forward applications to the company for their approval or rejection, then, as such, he would be held to the use of ordinary diligence, and the defendant would be liable for his negligence in the performance of such duty; and if you find that said agent neglected to forward such application for rejection or approval within a reasonable time, considering all the circumstances, then the defendant must be held liable for any loss occasioned by such neglect." Of this, the court said: "It may be, but the point we do not decide, that defendant is liable for the neglect of its agent as contemplated in this instruction; but in order to recover for such negligence the action must be based thereon and the petition must so declare." And the instruction was held to be erroneous for that no such issue was raised on the pleadings. We are inclined to the opinion that the principle announced in this instruction is sound and that the facts of the case were such as to require its application.

IV. The application named plaintiff as his beneficiary, and, had the certificate issued, likely she would have been named therein as such. But there was no contract, and the negligence, if any, was that of failing to discharge a duty owing the deceased. Had the certificate issued, whether plaintiff or some one else were beneficiary would have been optional with the insured, and as the injury, if any, was to him, his representative alone can maintain the action for resulting damages. See *Schmidt v. Association*, 112 Iowa, 41.

As to plaintiff the judgment is *Affirmed*. Because of the

error in not submitting the issues to the jury, the judgment against the intervener is *Reversed*.

PRESTON J., takes no part.