FRANCES GLENDY, Appellant, v. NATIONAL TRAVELERS BENEFIT ASSOCIATION, Appellee.

INSURANCE: Accident Insurance—Negligent Failure to Issue Policy—Evidence. Evidence reviewed, in an action for negligence in the non-issuance of a policy of accident insurance, and, in view of the short time elapsing between the making of the ap-

plication and the injury of the applicant, and the further fact that payment of the required first premium was not made to an alleged agent until less than two days prior to said injury, held not to establish the negligence charged.

**TRIAL:** Directed Verdicts—Overruling Motion—Right to Change

2 Ruling. The overruling of defendant's motion for a directed verdict at the close of plaintiff's evidence is no obstacle to sustaining the same motion at the close of defendant's evidence, *when, as a matter of fact, plaintiff's evidence has at no time been sufficient to present a jury question.*

**APPEAL AND ERROR:** Review, Scope of—Questions Failing to

3 Disclose Proposed Evidence. When the form of a question does not disclose (a) what the answer would have been, or (b) whether its exclusion was prejudicial, counsel must disclose what fact he desires or expects to prove, in order to render the objection to its exclusion reviewable.

*Appeal from Tama District Court.*—B. F. CUMMINGS, Judge.

MONDAY, JUNE 25, 1917.

ACTION at law to recover $1,000 on account of the alleged negligence of the defendant and its agents in not issuing a policy for accident insurance. Trial to jury, and, at the close of all the evidence, the court sustained defendant's motion for a directed verdict. The plaintiff appeals. —*Affirmed.*

*S. C. Huber* and *M. W. Hyland,* for appellant.

No appearance for appellee.

PRESTON, J.—1. Plaintiff is adminis-

1. INSURANCE: accident insurance: negligent failure to issue policy: evidence.

tratrix of the estate of deceased, Charles Harding, and was named beneficiary in an application for accident insurance policy in defendant company. Deceased was a son of plaintiff's. On July 1, 1914, deceased made written application to one M. T. O'Connell for an accident policy of $1,000 in defendant company. O'Connell, as a wit-

ness, says he had no license from the state of Iowa to write insurance. At the time O'Connell took this application, his business was driving for one Leanord, who was agent for defendant company. Leanord had been out of town for some days, or perhaps weeks, before O'Connell took the application in question. O'Connell claims that he had some arrangement with Leanord to take applications, and that Leanord left him some blanks; although O'Connell says he thinks the Harding application was not made on one of the blanks left by Leanord. O'Connell says that he sent in other applications, some of which were accepted by defendant, and that the company sent him blank applications and a letter requesting him to write applications. This is denied by defendant, and the letter was not produced. The defendant also denies that it issued policies on applications sent in by O'Connell previous to the application in question. It may be that, under the record, it should be held that, within a short time after deceased was injured, O'Connell was authorized to take applications. But the question is, of course, whether O'Connell was the agent of defendant at the time Harding's application was taken. This is one of the questions argued, but we think the case should be determined on another ground.

On the back of the application is a statement, "First payment, with application, $4.00," and appellant concedes in argument that, "On the back cover of the application there is a statement to the effect that the first premium must accompany the application;" but argues that, because of the position of this statement on the application, it would not bind the applicant. The evidence of the defendant's officers, testifying as witnesses, is that it was the universal rule of the company that the money must accompany the application. At one place in his testimony, O'Connell says he thinks that he sent the application and

the premium to the company in the same envelope, and that the first payment was sent by post-office money order. The money order or the record thereof in the post-office department was not produced. The application was received by the defendant company in Des Moines, July 7, 1914, and the company has ever since retained the application. No policy was ever issued. Defendant denies that the premium was received at the time of the application, and shows that it never was received by it. O'Connell testifies that Harding did not pay the $4 at the time that he made the application, but that he was to come in later and pay it, and that he did so either on July 4th or 11th. Both of these dates are on Saturday. We shall later set out the evidence on this point, but say now that, under the record, there can be but little, if any, dispute but that, taking the record altogether, it was on Saturday the 11th.

Deceased was injured by a fall from a hayrack on Monday, July 13th. The time of day is not shown, but it was before 4 o'clock in the afternoon; he was taken to the hospital at or before 4 o'clock. The undisputed evidence is that, in the ordinary course, it would take from 2 to 4 days for an application to be sent from Tama to Des Moines and for a return of the policy; that the average would be 3 days, but that this would depend somewhat upon the number of applications being received by the company; and that they were taken up in the order of their receipt. Testimony also shows that, during the month of January, 1914, defendant received about 3,000 applications, and in July, 1914, 6,000, and that the increase was so great that the company could not break in help sufficient to take care of the increase in business.

The defendant's motion to direct a verdict was upon several grounds, and, if it was good upon any ground, it would work an affirmance. We think the motion was good on the ground that, under the undisputed evidence;

and as a matter of law, the plaintiff failed to show any negligence of the company or its agents. We think it was not required to issue a policy until the first premium had been paid. We think that the payment of the premium was required, and that the company would not be required to issue a policy, nor would the agent be required to send in the application, until it was paid; at least, the company could not be held to be negligent for not issuing the policy if it refused on that ground. It is at least doubtful, under the record, whether O'Connell was at that time the agent for defendant. If he was not, then defendant would not be required to issue a policy on the application alone, even though O'Connell had received the premium. The premium never was received by the company, and, as said, it was not paid by the applicant to O'Connell until Saturday evening, July 11th, at 9 or 10 o'clock; so that, at the most, it was at least 2 days from the time of the payment of the premium to O'Connell to the time when deceased was injured, and one of these days was Sunday, leaving less than 2 days' time within which the application could be sent in to Des Moines, acted upon, and the policy returned to Tama.

Appellant relies upon the case of *Duffie v. Bankers' Life Assn.*, 160 Iowa 19, where it is held, substantially, that, where the applicant has done all he could, or was required to do, it should be held that there is reasonable probability that the policy would have been issued, but for the delay and negligence of the company or its agents. Appellant says, too, that, under the doctrine of that case, the question as to whether there was unreasonable delay was for the jury. That was the holding in that case, where the delay was about 30 days. But where, as in the instant case, the circumstances were such and the time so short, as shown by the undisputed evidence; it becomes, as we have said, a matter of law.

Referring a little more in detail to the testimony of O'Connell as to the date of the payment of the premium, and some other matters, he says:

"After taking the application, I did not report to the company until it was sent in; did not ask company anything relative to it before sending it in; remitted the money for Harding's application to the company when I gave the receipt. He (Harding) told me he would pay me the next Saturday night after this application, and I gave him the receipt when he paid. That was Saturday, and it went in Monday, if I remember right. Do not remember date I gave receipt to Mr. Harding; I think it was Saturday, because he said he would be in Saturday, and it seems to me it was Saturday evening, 9 or 10 o'clock. Yes, it was Saturday evening previous to when he was hurt. I could not tell you if he was hurt the Monday after he paid me. If July 4th was on Saturday and July 11th on Saturday, I would not say which date he paid, because I did not keep any track of it. If the receipt shows July 11th, it must be the date he paid me the money. If the receipt shows July 11th, I sent the application in the Monday following, which was the 13th, I think."

Redirect examination:

"It was the 4th day of July he paid me, or the evening before, but he agreed to pay it Saturday night."

Appellant concedes that the receipt given by O'Connell for the premium is dated July 11th. We think that, under the record, a finding that deceased paid this premium prior to Saturday evening, July 11, 1914, would not sustain a verdict of the jury had they so found. It should be said further that the application shows that applicant was a farmer, and one of the questions therein is as to whether his total income was at least $600 annually, and he answered, "No." The evidence of the defendant's offi-

cers is that they did not issue a policy on Harding's application because there was no money accompanying the application, and because the applicant could not qualify for insurance; that they did not issue policies where the income of a farmer is less than $600; and for other reasons. We are of opinion that, under this record, a verdict for plaintiff could not be sustained, and that, therefore, the court rightly directed a verdict.

2. TRIAL: directed verdicts: overruling motion: right to change ruling.

2.    At the close of plaintiff's testimony, the defendant moved the court for a directed verdict, which was overruled; and, at the close of all the testimony, the motion was renewed, with an additional ground, and this was sustained. Appellant concedes the rule to be that appellee, to save his motion, must renew it at the close of all the evidence, but says that, under the rule announced in *Phillips v. Phillips*, 93 Iowa 615, and like cases, the court, having held in the first ruling that there was sufficient evidence to take the case to the jury, could not put himself in the place of the jury and weigh the evidence and pass upon the credibility of the several witnesses. This is the rule where plaintiff has, as this court found in the *Phillips* case, made a case. But, as said by Mr. Justice Deemer in *McGlade v. City of Waterloo*, 178 Iowa 11, there are some exceptions to this rule. In the *Phillips* case, at page 617, the court said that, at the conclusion of plaintiff's evidence, the district court held that plaintiff had made a case requiring its submission to the jury, and that that holding was undoubtedly correct; and again, at page 618, the court said that if, as the court properly held, the contestants, when they closed their evidence, in chief, had overcome the burden which the law cast upon them, and had, in addition thereto, made a prima-facie case requiring the submission of the issue of mental capacity to the jury, it did not matter what evidence was thereafter introduced

—the case was for the jury.   But suppose the court, in rul-
ing on the first motion, was in error, and that, in fact, the
evidence was not sufficient to sustain a verdict for plain-
tiff, had one been returned, is the court thereafter pre-
cluded from changing his mind, if satisfied that he was in
error in the first ruling?   And would he be precluded from
granting a new trial if he was satisfied from the entire rec-
ord that the verdict was not sustained?   It was said in the
*McGlade* case that, "If, at the conclusion of plaintiff's tes-
timony, there is enough to take the case to a jury," etc.
We think this means that, if there is in fact sufficient evi-
dence to take the case to the jury, then the introduction
of further testimony by defendant leaves the matter for
the determination of the jury, unless, as in that case, the
physical facts are such and so strong as to show that, on
the whole case, a verdict for plaintiff was not warranted;
then the court may sustain the verdict at the close of all
the testimony.   In the present case, one of the questions
was whether it was reasonably probable that defendant
would have issued the policy had defendant and its agents
been free from delay and negligence.   The trial court may
have thought, at the close of plaintiff's testimony, that
there was a jury question as to whether deceased, Harding,
had done all that was required of him in the payment of
the premium on July 4th or 11th, and that, if the jury
should find that it was on the 4th, there might be a jury
question as to whether there was unreasonable delay.

   We think that the testimony of O'Connell itself, taken
altogether, shows that it was on the 11th; but the defendant
introduced in evidence a letter from O'Connell, which, we
think, has a tendency to show that he did not enclose the
post-office order for $4 with the application, and that it
had not then been paid.   There is some other testimony
bearing on this question, and, as said, the receipt shows
that it was paid on the 11th of July.   In addition to this,

the officers of defendant testified that the policy would not have been issued, for the reasons before stated. So that, taking the entire record together, we think that a verdict for plaintiff could not be sustained.

3. Lastly, it is urged by appellant

**3. APPEAL AND ERROR: review, scope of: questions failing to disclose proposed evidence.** that the court erred in refusing to permit plaintiff to introduce testimony as to oral statements made by the agent at the time of the taking of the application. Such statements might or might not be proper. If the agent had attempted to give his legal opinion in regard to some question in connection with the application, it might not be proper. Appellant states in argument what he expected to show, and, if we could consider that, it is, to say the least, doubtful whether it would be competent; but there is nothing in the record to indicate, either from the form of the question or by an offer to prove, what plaintiff sought to show.

It is our conclusion that the judgment of the district court was right, and it is, therefore,—*Affirmed.*

GAYNOR, C. J., WEAVER and STEVENS, JJ., concur.