L. U. MORTIMER, Appellee, v. FARMERS MUTUAL FIRE & LIGHTNING INSURANCE ASSOCIATION et al., Appellants.

No. 41597.

JUNE 20, 1933.

REHEARING DENIED MAY 19, 1934.

Guy H. Hall, and H. H. Griffiths, for appellants.

George J. Dugan, for appellee.

ALBERT, J.—This action developed from the following fact situation: In April, 1929, the plaintiff, L. U. Mortimer, was a resident of the town of Minburn, where he lived with his wife, who died in the early part of that year. Mortimer was the owner of a farm about four miles northeast of Minburn which was occupied by his son, and on the death of his wife, he moved his household goods to the farm and thereafter lived in the house on the farm with his son's family.

The defendant, Martin Nissly, was at all times involved herein, a director and acting president of the defendant association. He solicited insurance, adjusted losses, and received compensation therefor. Mortimer had a policy of insurance on his farm buildings on the farm above referred to with the defendant company, but the same is only incidentally involved in this litigation.

On or about April 10, 1929, Mortimer met Nissly in the town of Minburn. Just what conversation took place between them is much in dispute under the record, but the jury might have found that Mortimer told Nissly that he was moving his household goods to

the farm and wanted $500 insurance thereon in the defendant association; that Mortimer signed an application for such insurance and paid to Nissly a policy fee of $1.50 or $2, and Nissly said he would write the insurance or take care of it. Mortimer gave Nissly a description of the property he was moving to the farm, and asked Nissly if there was anything else he had to do and Nissly told him "that was all."

Mortimer had a policy for $1,000 on his household goods in his residence in Minburn in another company referred to in the record as the "Town Mutual," and after this conversation with Nissly, Mortimer went to Beaver, the agent for the Town Mutual, and had the policy in that company canceled.

After this conversation between Mortimer and Nissly, Nissly went to Dallas Center and talked with H. S. Fix, secretary of the defendant association, about Mortimer's policy.

On June 13, 1930, the farm property burned and the household goods above referred to were totally destroyed. Mortimer went to the place where he kept his private papers, thinking he had a policy covering the household goods, but found that he had none as no such policy had ever been issued by the defendant company. The other policy on the farm buildings with this company was paid promptly. The loss of the household goods was then taken up between Nissly and Mortimer, and eventually between Mortimer, Nissly, and the board of directors of the defendant association, resulting in a refusal on the part of the defendant association to pay for the loss of these household goods which was promptly followed by the bringing of this action resulting in a judgment against the defendant association for $500.

 This is not an action bottomed on the theory of oral insurance, nor is it an action based on a contract to issue insurance, but is an ordinary tort action based upon negligence.

The appellants argue quite exhaustively the question of oral insurance and furnished a very excellent brief in relation thereto, but as the question is not involved, we give no attention thereto.

Actions for torts have been recognized in this sort of cases in this court in several different opinions. See Johnson v. Farmers Ins. Co., 184 Iowa 630, 168 N. W. 264; Duffie v. Bankers Life Ass'n, 160 Iowa 19, 139 N. W. 1087, 46 L. R. A. (N. S.) 25; Walker v. Farmers Ins. Co., 51 Iowa 679, 2 N. W. 583.

In the last case the suit was on a contract of insurance, and under such an action it was held that recovery could not be had for the negligence of the company's agent.

The Johnson and Duffie cases were both direct actions in tort for damages for negligence, and so far as the action itself is concerned, were affirmed by this court.

It seems to be the general rule elsewhere, under this kind of a fact situation, that an action *ex delicto* is a proper remedy. See Boyer v. State Farmers Mutual Hail Ins. Co., 86 Kan. 442, 121 P. 329, 40 L. R. A. (N. S.) 164, Ann. Cas. 1915A, 671; Wilken v. Capital Fire Ins. Co., 99 Neb. 828, 157 N. W. 1021. A contra case may be found in National Union Fire Ins. Co. v. School District, 122 Ark. 179, 182 S. W. 547, L. R. A. 1916D, 238. But, so long as we are committed to the rule in this state that such an action is the proper remedy, we are not disposed to vary therefrom.

Under the record made in this case, therefore, the plaintiff had a case for the jury which determined the same in his favor, and up to this point the appellants have no tenable grounds for complaint. But they here say that their corporation can only create liability for fire loss by written contract, and they therefore argue that by reason of the limited rights and powers of their corporation, under the statute and their articles of incorporation they cannot be held liable in tort.

They assert that these assessment associations are a peculiar creation, co-operative in character, and doing business at cost, only insuring their members who mutually insure each other, and they have special limited powers and functions under chapter 406 (Code 1931); that under section 9029 they are authorized to enter into contracts with each other for the purpose of this protection, and these contracts of insurance shall consist of:

"1. An application on blanks furnished by the association. * *

"2. A policy issued by the association in accordance with its rules, and approved by the commissioner of insurance."

They assert that the only power possessed is to levy assessments on its membership to pay losses occurring from casualties such as fire, lightning, etc., as specified in section 9029, and, therefore, they have no power to levy assessments for damages such as arise in cases of this character.

The power of the corporation to assist its membership is set out in section 9037, Code 1931, reading as follows:

"Such associations may collect a policy and contingent fee, and such assessments, provided for in their articles of incorporation and by-laws, as are required to pay losses and necessary expenses, and for the creation and maintenance of an emergency fund for the payment of excess losses and no part of such emergency fund can be claimed by any member whose policy expires or is surrendered for cancellation."

It will be noticed that this section specifies that they may levy assessments as required to pay losses "and necessary expenses." We think the statute is broad enough to cover this tort liability which would be classed as "necessary expenses." However, if this be not true, this corporation is a creature of the statutes, and in our judgment, must respond for its torts the same as any other corporation authorized by statute. The fact that it may be limited in its powers of raising money among its membership, or as to the application of money when so raised, is, in our judgment, wholly beside the question. If this were not so, we would have an artificial being which could be free of any act committed in tort, and not responsible in any way therefor. This we do not think is the law.

The general rule is that a corporation is liable civilly for all torts committed by its servants or agents under its express or implied authority. This rule seems to be quite universal. See White v. International Textbook Co., 173 Iowa 192, 155 N. W. 298; Wolters v. Summerfield Co., 160 Iowa 127, 140 N. W. 388; Stewart v. Waterloo Turn Verein, 71 Iowa 226, 32 N. W. 275, 60 Am. Rep. 786; Donaldson v. Mississippi & Missouri R. R. Co., 18 Iowa 280, 87 Am. Dec. 391; 14a C. J. page 765, section 2829.

It seems to be a well-settled doctrine also that a corporation cannot, in order to escape liability for the wrongful acts of its agents or employees, assert that such acts were beyond the scope of its corporate power, or that they occurred in connection with a transaction beyond the scope of such power. White v. International Textbook Co., supra; 14a C. J. 769, section 2831.

It is also settled that corporations are liable for negligence to the same extent as individuals where there is a wrongful omission to act at all, or the doing of a lawful act in a wrongful manner. This doctrine is recognized in Wolters v. Summerfield Co., supra. See, also, 14a C. J. page 777, section 2851.

These general rules have in the past had some exceptions, especially as to the eleemosynary or charitable corporations, but even such institutions, under such circumstances, are not free from liability for their torts. See 11 C. J. 374, section 106 et seq. And even when such freedom from liability is recognized in these institutions, it is usually on the ground of public policy. There is no statute freeing this association from its negligence, and we are unable to find any authority differentiating this kind of a corporation from the ordinary corporation in so far as liability for torts is concerned.

Some objection is made to rulings on evidence, and while some of such rulings were erroneous, they were without prejudice and would, therefore, not warrant a reversal.

The question of contributory negligence, under the record, was a question for the jury.

Some question is raised as to the failure to make proof of loss, but the evidence shows that immediately after the fire, Mortimer went to Nissly, who assured him that the loss "would be taken care of." Mortimer was nursed along in this belief by Nissly, the president of the company, until the meeting of the board of directors, when the matter was taken up and the claim rejected. Under these circumstances, we do not think the association is entitled to rely upon the failure to file written proof of loss.

Some complaint is made because the court did not summarize the issues in its instructions, but copied parts of the pleadings. We are committed to the rule that exhaustive pleadings should not be copied in full, yet we do not think enough of that is done in this case to prejudice the rights of the defendants.

Assault is made on certain instructions, one in particular, where the court said:

"It is established by the evidence without controversy, that at the time plaintiff alleges his application or proposal for insurance was given to Martin Nissly, he, the said Martin Nissly, was a duly authorized agent, and president of the defendant insurance company."

We do not think this question is very material because, whether he was president or the acting president, he was a general agent of the company, and in fact apparently from the record was "the company." The fact that the court in its instructions may have referred

1252

to him as "an agent" is not such a variance from the record as to prove prejudicial to the defendants, and we do not think it is reversible error.

Several other instructions are assaulted, but we find no error.

Complaint is also made as to the court's ruling in striking certain portions of defendants' pleadings. What we have already said disposes of the foundations involved in said motions, and the case having been brought and tried on the theory on which it was, there was no error in the court's ruling.—Affirmed.

KINDIG, C. J., and STEVENS, DONEGAN, ANDERSON, and CLAUSSEN, JJ., concur.