CAROL JEAN WERTHMAN and LORI J. WERTHMAN; JOSEPH D. WERTHMAN et al., by their next friend, CAROL JEAN WERTHMAN, appellees, v. CATHOLIC ORDER OF FORESTERS, a corporation; EARLE V. ULRICH et al., appellants.

No. 51608.

(Reported in 133 N.W.2d 104)

484

James R. Hamilton of Edson, Hamilton & Connell, of Storm Lake, for appellants.

Justus R. Miller of Miller, Miller & Miller, of Cherokee, for appellees.

THOMPSON, J.—In this case the plaintiffs, as the widow and heirs of Joseph Dale Werthman, brought their declaratory-judgment action against defendant Catholic Order of Foresters, a corporation engaged in the business of selling and providing life insurance, and its agents, seeking to recover the sum of $9000. The first count of their petition was based on contract; but this was dismissed by the trial court and since no appeal has been taken from this ruling we are not here concerned with it.

The second count was based on the alleged negligence of defendant corporation and the other defendants, its agents. It is claimed that after Joseph Dale Werthman had made written application for insurance on his life in the amount of $9000, the defendants negligently delayed processing the application and advising the applicant of their acceptance or rejection of it, so that when Werthman died no contract was in effect and his estate was damaged in the amount of the insurance applied for. The case was tried to the court, which found negligence on the part of the defendants and entered judgment for the plaintiffs on Count II of their petition for the amount asked, with interest. No appeal was taken by the plaintiffs from the dismissal of Count I, but the defendants have asked a review of the adverse judgment on Count II, assigning several errors.

The estate of Joseph Dale Werthman had been closed before the commencement of this action. The trial court held that in view of this fact, the plaintiffs, the surviving spouse and children of the decedent, were the proper parties to maintain the suit. No complaint is made of this ruling.

The chronology of the various dealings and actions of the parties in the period from July 18, 1962, when Werthman signed his application for insurance in defendant corporation, with the other two defendants as the soliciting agents, until August 11 next, when he was killed in an automobile accident, is of controlling importance upon the question of negligence. Our problem is not to decide whether there was actually negligence on the part of the defendants, but whether there was sufficient competent evidence before the trial court to permit it to so find. If there was such evidence, its finding of fact upon the point is binding upon us. While the suit was brought as a declaratory-judgment case the action is clearly at law. Henderson v. Hawkeye-Security Ins. Co., 252 Iowa 97, 100, 106 N.W.2d 86, 88.

On July 18, 1962, defendants Ulrich, an insurance agent and fieldman, and Kearney, a district supervisor, both representing defendant corporation, called at the Werthman home about three miles south of Cherokee. As a result of their call, Mr. Werthman signed an application for insurance on his life and paid the first premium. While the amounts stated in the application require some computation the trial court found the damages to be $9000 and there is no complaint as to this amount, if anything is due.

The application provided that the insurance would not be in effect until the applicant had been examined by a medical examiner for the corporation, and until it had been approved by the High Medical Examiner. Werthman appeared for his medical examination on July 24 next. He was found to be overweight and to have higher blood pressure than the corporation's rules permitted for a standard policy, or certificate, and the medical report, which reached the corporation's offices in Chicago on July 26, so showed. Mrs. Werthman testified that at the time the application was taken one of the agents expressed some doubt that Mr. Werthman's weight had been correctly stated, and told him

that if he was found to be overweight he might be "rated up"; that is, a higher premium would be required; and that Mr. Werthman said that would be all right.

The chief medical officer of the corporation examined the local doctor's report on July 27, but no action was taken on that date or on July 28 or 29, which were a Saturday and Sunday. On July 30 a preliminary notice of acceptance of the application, but on a Class "B" basis, requiring a premium "mark up" was sent to the agent Ulrich at Sheldon, where he resided. No notice was sent to Werthman, and nothing further was done until August 2, when a letter was sent to Ulrich enclosing a waiver for Werthman's signature. This waiver was, in effect, an agreement on the part of Werthman to pay 37¢ per month additional per thousand of insurance above that specified in his application.

Ulrich received this on either August 3 or 4. On August 5, which was Sunday, he was in Cherokee, but did not attempt to contact Werthman. On the 6th and 7th other appointments occupied his time. On August 8 Ulrich and Kearney, who were both in Remsen, testified they attempted to call Werthman, but got no answer at his home. Kearney drove through Cherokee that evening, but did not have the waiver with him and made no effort to contact Werthman. On the 9th Ulrich went to Sioux City. On August 10 he was in Cherokee, and tried several times to call Werthman, but he was out of town and neither his wife nor his employer knew where he could be reached. Ulrich waited for several hours, but finally returned to Sheldon. A call on August 11 brought the word that Werthman had been killed that morning in an automobile accident on his way home from Kingsley, where he had spent the night with a sister.

██ I. That an insurer may be compelled to respond in damages for negligence in accepting or rejecting an application for insurance is settled by several Iowa cases. The leading case in Iowa, and perhaps in jurisdictions in the United States generally, is Duffie v. Bankers' Life Association, 160 Iowa 19, 139 N.W. 1087, 46 L. R. A., N. S., 25. This has been recognized in Johnson v. Farmers Insurance Co., 184 Iowa 630, 168 N.W. 264; Winn v. John Hancock Mutual Life Insurance Co., 216 Iowa 1249, 250 N.W. 459; Bemisdarfer v. Farm Property Mutual

Insurance Assn., 217 Iowa 770, 252 N.W. 551; and Mortimer v. Farmers Mutual. Fire & Lightning Insurance Assn., 217 Iowa 1246, 249 N.W. 405. In the Winn case we held there was no sufficient showing of negligence, and also that there was a failure to prove the terms of the proposed policy and so the actual damages sustained. Recoveries by the plaintiffs on the ground of the negligence of the proposed insurers were upheld in the other cases.

In Kukuska v. Home Mutual Hail-Tornado Insurance Co., 204 Wis. 166, 170, 235 N.W. 403, 404, the Wisconsin Supreme Court said: "* * * the weight of authority undoubtedly is that an insurer may be held liable under such circumstances in the amount of the actual damage sustained by the applicant. * * * The leading cases holding the insurer liable for negligence are Boyer v. State Farmers Mutual Hail Insurance Co. (1912), 86 Kan. 442, 121 P. 329, 40 L. R. A., N. S., 164, and Duffie v. Bankers' Life Association (1913), 160 Iowa 19, 139 N.W. 1087, 1090, 46 L. R. A., N. S., 25." The Wisconsin court also said: "What constitutes a reasonable time must in this, as in all other cases where the question is involved, except in clear cases, be a question of fact." Loc. cit. 204 Wis. 173, 235 N.W. 405. So, in Glendy v. National Travelers Benefit Association, 180 Iowa 572, 163 N.W. 352, our holding was that it was an exceptional case in which the evidence entirely failed to show any substantial evidence of negligence. It appeared that the proposed insured paid the required deposit on his application on Saturday evening; the applicant was injured on the following Monday; so that there was an entirely insufficient time for the insurer to act upon the application.

The Duffie case, supra, holds: "Having solicited applications for insurance, and having so obtained them and received payment of the fees or premiums exacted, they are bound either to furnish the indemnity the state has authorized them to furnish or decline so to do within such reasonable time as will enable them to act intelligently and advisedly thereon or suffer the consequences flowing from their neglect so to do. Otherwise the applicant is unduly delayed in obtaining the insurance he desires, and for which the law has afforded the opportunity, and which the insurer impliedly has promised, if conditions are satisfactory." Loc. cit. 160 Iowa 27, 28, 139 N.W. 1090.

Appleman, Insurance Law and Practice, Volume 12, pages 326, 327, says: "The more liberal, and probably the better rule, is to the effect that an insurance company obtaining an application for insurance is under a duty to accept it or reject it within a reasonable time, and is liable if it delays unreasonably in acting thereon. * * * And even though it appears that the insurer may have rejected the application, if it delays unduly in notifying the applicant of such rejection, it may be held liable as if it had accepted the risk."

The theory of the Duffie and other cases holding to the same rule is that the applicant wishes insurance coverage, and is entitled to prompt action. If his application is approved, it should be done with reasonable diligence so that his insurance will be in force; if it is rejected, or, as here, a counteroffer is made, that also should be done with due expedition, so that he may either accept the counteroffer, if one is made, or obtain his insurance protection elsewhere if his application is rejected. The Iowa rule has been criticized in other jurisdictions, and indeed, so far as it applies to a rejection or counteroffer and the securing of insurance in another company, forthwith, is concerned, it seems somewhat unrealistic. But it is firmly established in Iowa, and has apparently met with majority approval elsewhere.

The only question now remaining is factual: what is due care under the circumstances? The elapsed time here between the medical examination and the death of the applicant was shorter than in any of the earlier Iowa cases; but we are unable to say there was not a jury question, which means in this case a question of fact for the court, on the issue of negligence.

II. The defendants' assigned errors are four in number. The first, second and fourth raise the same point. It is their apparent position that there were no facts sufficient to warrant a finding of negligence against them. Here we are faced with the general rule that this question is ordinarily for the jury, or for the court trying a law action without a jury. We must give the evidence of the plaintiffs the most favorable interpretation it will reasonably bear. It is not contended that the acts of the agents— Ulrich and Kearney—were not the acts of the corporation; nor could it be. No taint of negligence attached to the defendants,

of course, until the applicant Werthman had taken his medical examination. The examining doctor sent in his report promptly. Whether it was processed as expeditiously as due care might dictate in the offices of the corporation need not be determined, although the officials there seem to have lost little unnecessary time. Nor do we think negligence can be predicated on the dispatch of the notice that the application was not acceptable as made, and the so-called waiver, to the agent taking the application instead of to the insured. The corporation properly sent the counteroffer through the same channels the application was received.

But it also appears that when the agent Ulrich received the waiver he did not attempt to contact the applicant for at least four days. There was evidence, previously referred to, that Werthman said that he would be willing to pay an additional or "rated up" premium if his application was not accepted as first made. The waiver was received not later than August 4. No attempt was made to contact Werthman and secure his signature, or to advise him his first application had not been accepted, until August 8. He was not reached; and the matter was then laid aside until August 10, when he could not be reached. The agent Kearney had passed through Cherokee on the evening of August 8, and Ulrich had been in Cherokee on the 5th; and at neither time was any effort made to contact Werthman. August 5 was Sunday, and perhaps Ulrich did not consider it a day for the transaction of business; but this is somewhat offset by Ulrich's statement that he could not remember why he was there "unless it was a Foresters' meeting." Kearney's failure to stop as he went through Cherokee on August 8 is explained by the fact that he did not have the waiver with him, it having been left with Ulrich.

We do not think negligence can be based upon the failure of the defendants to search the surrounding towns and countryside for Werthman on August 10, when Ulrich made a considerable effort to reach him. Neither his wife nor his employer knew where he might be, and they had better means of knowing of his plans and itinerary than did Ulrich.

The plaintiffs plead two specifications of negligence: 1, taking an unreasonable time to act upon the application for insur-

ance; and 2, taking an unreasonable time to notify the applicant of the rejection or modification of his application. We have serious doubts that there is any substantial showing of an unreasonable delay in processing the application in the home offices. But we are also of the opinion that there was a sufficient showing of an undue delay in notifying Werthman of the rejection and counteroffer, and presenting him with the waiver, or agreement for higher premium, to require the determination of the question by the trier of the facts. The delay was not so long as in the Duffie case and the other Iowa cases which have upheld judgments for plaintiffs in this class of cases; but we think it was sufficient to prevent us saying there was no substantial evidence to support the trial court's findings of fact. We do not say the corporation and its agents were negligent; only that we may not set aside the determination of the trial court on that question. Its findings have the effect of a special verdict, and we may not interfere.

▪ III. There is, however, a limitation on the rule expressed in the paragraph immediately preceding. We have said: "We are of course bound by the findings of fact of the trial court if they are supported by substantial evidence; it is only when such findings are undisputed or no conflicting inferences may be drawn from them that we may interfere. *We may also find error if the trial court applied erroneous rules of law which materially affected the decision.*" (Italics supplied.) France v. Benter, 256 Iowa 534, 536, 128 N.W.2d 268, 270.

▪ So, while we must hold there was sufficient evidence from which the trier of the facts could find negligence, we find upon examination of its conclusions of law that it applied an erroneous principle in reaching its decision. The court, in its conclusions of law, at one point said: "* * * peculiar circumstances known to the agent require a high degree of care on his part, the failure of which should be charged to his company as negligence." There is no contention here that defendant corporation was not bound by the acts and knowledge of its agents; but the defendants contend that the court, by using the term "high degree of care" placed an undue and improper burden upon it. It is urged that the care incumbent upon the defendants was ordinary care under

the circumstances. In Duffie v. Bankers' Life Association, supra, we said: "We think whether defendant in the exercise of *ordinary diligence* should have passed on the application prior to Duffie's death was fairly put in issue." Loc. cit. 160 Iowa 25, 139 N.W. 1089. (Italics supplied.) This seems to say that the standard of care required is ordinary care—"ordinary diligence"—under the circumstances.

There are no degrees of care or of negligence in Iowa. Tisserat v. Peters, 251 Iowa 250, 252, 99 N.W.2d 924, 925, 926, and citations. The standard is always the care which an ordinarily prudent person would use under the circumstances. However, the use of the expression "high degree of care" by the trial court, while unfortunate and not to be commended, was in itself probably not reversible error.

In Nazarro v. Hudson & Manhattan R. Co., 125 N. J. L. 108, 111, 14 A.2d 521, 523, it is said: "It will suffice if we refer to the unanimous opinion of our Court of Errors and Appeals in New Jersey Fidelity, etc., Co. v. Lehigh Valley R. Co., 92 N. J. L. 467, at page 470, 105 A. 206, at page 207, in which Kalisch, J., said: '* * * "high degree of care" denotes no more than a degree of care commensurate with the risk of danger.' "

But the court in the instant case went further. Again in its conclusions of law it said: "All of these factors required a higher degree of care on the part of the defendants, Ulrich and Kearney, and hence on the part of the defendant Catholic Order of Foresters, than might obtain in an ordinary case." The standard of care in "an ordinary case" is that of "reasonable care under the circumstances", as has been pointed out above. So the court was clearly placing a greater burden on the defendants than they were required to bear. They were deprived of the right to have their acts weighed by the one and only standard of care known to Iowa law. What the court had in mind we do not know; nor do we know whether it would have found negligence if it had weighed the acts and failures to act of the defendants by the established rule. They were held to "a higher degree of care than might obtain in an ordinary case."

The conclusion is inescapable that the court applied an erroneous standard of care, an erroneous rule of law, in reaching

its determination of the liability of the defendants under the facts. It had a right to find the facts; but it weighed them on a faulty scale of law.

For the reason set forth in Division III the case must be reversed and remanded for further proceedings consistent with this opinion.—Reversed and remanded.

All JUSTICES concur.