The ERTL COMPANY, Appellee-Cross-Appellant,

v.

LANGE PLASTICS COMPANY, Appellant-Cross-Appellee.

No. 52726.

Supreme Court of Iowa.

April 9, 1968.

Rehearing Denied June 10, 1968.

Fuerste & Carew, Dubuque, for appellant-cross-appellee.

Shuttleworth & Ingersoll, Cedar Rapids, for appellee-cross-appellant.

LARSON, Justice.

When the plaintiff, The Ertl Company, brought an action on account against defendant, Lange Plastics Company, for tool and die casts and an agreed price for certain ski boot buckle mountings manufactured for defendant in the sum of $1,210.91 and interest and costs, defendant admitted the transaction but affirmatively alleged the die cast parts were not suitable for its proposed purpose, alleged the parts were defective, had inherent structural weaknesses which constituted a breach of implied warranty, and asked that plaintiff's petition be dismissed at its cost.

Defendant also counterclaimed alleging a breach of warranty in that the mountings were defective by deficiency in structural strength. It further alleged that after the boots with these mountings attached were sold to the public, the mounts broke in large numbers necessitating their replacement at a loss to defendant of $9,263, and asked that sum as damages.

Trial was had to the court without a jury and it (1) found that the amounts failed as a result of plaintiff's failure to follow the terms of its agreement, dismissed plaintiff's account action, and ordered it to return the sum of $400, an amount previously paid on account by defendant; (2) found that, although the failure of these mounts required replacement of 183 boots, there was no liability on plaintiff because that was not an anticipated result of a breach of the contract to furnish these mountings, that there was an insufficient showing of a representation by plaintiff, and reliance thereon by defendant, to constitute a warranty of fitness, and rendered judgment against defendant on its counterclaim.

When defendant's motion to enlarge findings and modify judgment was denied, defendant appealed and plaintiff cross-appealed.

I. The trial court's findings of fact are binding if they are supported by substantial evidence, and it is only when the findings are undisputed or no conflicting inferences may be drawn that the Supreme Court may interfere. Kuhn v. Tank, Iowa, 156 N.W.2d 127, decided February 6, 1968, and citations; Rule 344(f) (1), R.C.P.; Werthman v. Catholic Order of Foresters, 257 Iowa 483, 491, 133 N.W.2d 104; France v. Benter, 256 Iowa 534, 536, 128 N.W.2d 268.

Moreover, the finding of a trial judge in a jury-waived case has the effect of a special verdict, and the function of this court is not to weigh the evidence but to decide whether the trial court's finding is supported by substantial evidence. Ritland v. Security State Bank, 257 Iowa 21, 23, 131 N.W.2d 464; Ver Steegh v. Flaugh, 251 Iowa 1011, 1022, 103 N.W.2d 718, and citations.

It is only in exceptional cases that such a fact question as is presented here by each party may be decided as a matter of law and, in considering the propriety of a submission of a fact issue to the trier of fact, we will give to the proponent's evidence the most favorable construction it will reasonably bear. We believe this evidence in both the plaintiff's action and defendant's counterclaim sufficient to require a fact-finder's conclusion.

The burden of proof, as in most civil cases, is measured by the test of preponderance of the evidence (Rule 344(f) (6), R.C.P.) and the burden follows the pleading; that is, he who pleads and relies upon the affirmative of an issue must carry the burden of proving it. Rule 344(f) (5), R.C.P.

II. The Ertl Company, an Iowa corporation located at Dyersville, Iowa, operated by Joseph and Fred Ertl, manufactures various toys and produces cast parts on

contract for its customers. Lange Plastics Company, an Iowa corporation located at Dubuque, Iowa, operated by Robert Lange, who is referred to hereafter as defendant, manufactures ski boots, among other things.

Defendant began manufacturing a plastic ski boot in 1962. In 1963, after examining a competitor's ski boot that utilized buckle fastening rather than lace fastening, he sought means to adopt that fastening. He designed a buckle mount for his ski boot line, making sufficient alterations so as not to infringe upon his competitor's buckle patent. Defendant testified that he made several "mock-up models" patterned after his competitor's buckle mount, that they were made from sand-castings and were attached to his ski boots only for the purpose of a spring showing in March of 1964. The modified boot was well accepted by distributors and "orders were actually taken for the Lange boot at that show." He further testified that the next thing that was done with relation to getting the boot into actual, as opposed to mock-up, production was that he contacted "Mr. Ertl to see what was necessary to obtain a buckle." It is undisputed that plaintiff had never seen a ski boot, did not know what one looked like, and was not furnished a model of a ski boot upon which the buckle mount was to be fastened. Nevertheless, the Ertls were asked to bid upon 5,000 mounts similar to those presented as models.

Joe Ertl testified that at his first meeting with defendant "I told Mr. Lange that we would need a drawing of this part in order to build the tools * * *." After some negotiations defendant accepted plaintiff's second price quotation. At defendant's request, with some measurement directions from defendant's employee Luensmann, plaintiff made a drawing of the buckle mount and the necessary molds were cut.

The first sample castings were made and submitted to defendant for approval. They proved to be unsatisfactory when defendant attempted to attach them to the boot. Mr. Ertl said, "He [Lange] informed me it was unsatisfactory because the parts were breaking. * * * They were breaking as they were being riveted to the boot, * * *."

Lange testified thereafter, "* * * we told Mr. Ertl to make the revisions and when the revisions were made to run the parts * * *." The requested revisions were set out in Exhibit 7, a letter from Lange to Joe Ertl, which stated: "Many thanks for dropping in and discussing the changes on our buckle die. As we discussed, please make the following corrections on the die: 1. Reduce the size of the holes to the size of our sample, which will give a snug fit for a rivet cap. 2. Add .030 to the bottom side of the entire part. 3. Add a large radius to the outside of the post, and a small radius on the inside of the post to increase the strength."

Joe Ertl testified that the thickness of the bottom of the buckle before alteration was .062 and it was supposed to be increased by .030 and the final thickness was to be .092 inches. He admitted that the buckle made from the revised mold had "its face beefed up still further than thirty-thousandths of an inch. This is because the mold maker made a mistake * * *. I had * * * instructed him [mold maker] to add thirty-thousandths." On further examination he admitted that his own drawing called for the revised base to be .155 or .063 thicker than had been agreed upon and requested in Exhibit 7.

As to the post radius revision, Joe Ertl first said he thought he had personally told the mold maker to increase the radius, but later conceded he did not check to see whether such increase had been made. It is not disputed that no such increase had been made in the final product as agreed to and requested in Exhibit 7. He stated: "It could be my recollection now that the die maker failed to follow my instructions so far as increasing the radius of the posts is concerned." On cross-examination he ad-

mitted: " * * * the radius was not changed."

Thus, the plaintiff practically concedes the part furnished, due to these errors, did not meet the revised specifications. The trial court apparently held as a matter of fact that the failure to comply with the revised specifications rendered the die cast buckle mounts useless to defendant, denied plaintiff recovery on account, and dismissed plaintiff's petition.

In an effort to sustain his burden to show reliance upon plaintiff's representation that the buckle mounts were reasonably fit for his purpose, defendant testified he personally took the mock-up buckle to Ertl's factory, told Joe Ertl that he was making a ski boot, needed a buckle mount for it, and asked the Ertls for advice as to how it should be made. He said he explained it had to be very strong to withstand the stresses of skiing, showed them one used on a competitor's ski boot, and told them the shape necessary for use on his boot. However, he admitted he did not show them his plastic boot nor explain the process required to attach the mount to the boot.

Nevertheless, he testified Joe Ertl assured him their product would be strong enough to withstand the stresses of skiing. Lange said he never would have ordered these mounts if he knew the Ertls were not going to stand behind them, and denied Joe Ertl's testimony that they would warrant neither design nor function of such parts.

After Joe Ertl made the preliminary drawing of the mount at defendant's request, defendant approved the drawing, ordered the parts made, and paid $400 on the account.

After Lange attempted to rivet the sample buckle mounts to his boots, the mounts cracked, generally at the base, and a discussion of the problem by the parties followed. Lange testified he asked Joe Ertl how the part could be made stronger. He said Joe told him, if the base of the buckle and the radius of the posts were increased, the buckle mount would be plently strong enough and he was sure it would stand up.

In response to the question of what were his (Ertl's) suggestions as to how to make the buckle mount strong enough, Lange said: " * * * he said if we increased the base of the buckle and increased the radius of the post that it would be plenty strong enough to withstand what we were interested in using the buckle for." Ertl denied giving his opinion as to strength sufficiency, but said he agreed the proposed changes would strengthen the part, and he might have agreed with the customer who expressed an opinion as to its sufficiency. That was his policy.

Although no tests were made by Lange of the boot with sample mounts, he testified that on Ertl's suggestion he did write the letter (Exhibit 7) which directed Ertl to make certain definite changes in the buckle mount. It is undisputed that when the revised and "heavied up" sample was delivered, Ertl was notified the revised part was acceptable and full production then commenced.

Ertl testified he assumed Lange was testing the buckle design and the method of affixing it to the boot, and said Lange had never explained the extent of the pressure exerted on the buckle as a result of the skier making sharp turns at high speed, or that the buckles were subject to extraordinary stress impact in being struck by the skier or other objects while in use. He said Lange knew he had no experience on skis and knew nothing of the stresses on the boots. He further stated Lange made no request that he perform any tests and, because the boot involved a secret process, he was not permitted to see Lange's application of the mount. He mistakenly assumed the successful competitor's buckle mount brought him by defendant as a sample was also an aluminum alloy casting because its company, approached by defendant, employed only the process of die casting and a single alloy, A–380. Thus, each party testified to his understanding of the article

ordered and each denied responsibility for the fitness and suitability of the part for its intended purpose.

In its order pursuant to defendant's motion to enlarge findings, the trial court stated it "did not find that defendant relied on plaintiff's assurance that the mountings would be satisfactory," that on this finding of fact the court rendered judgment for the plaintiff. It also "did not find that the buckles failed as a result of plaintiff's non-compliance with directions," and felt the evidence did not make clear the extent the basic design of defendant Lange was at fault.

■ It is well settled that, to sustain a breach of warranty contention, the complaining party must show by at least a preponderance of the evidence that he relied upon the other party's judgment and skill as manifested in its representations. See § 554.16, Code 1962. Apparently the trial court felt defendant here failed in this burden, and also found he had not established that the mount's failure was plaintiff's fault.

■■ We are satisfied there was substantial evidence to sustain the trial court's finding that plaintiff failed to deliver the buckle mountings as ordered and was therefore entitled to no recovery upon their action for account. There was also substantial evidence to sustain the trial court's finding that there was no warranty, express or implied, as to the fitness of these mountings for the intended use. Although we may or may not agree with these findings, we are not permitted to alter them in this appeal. Rule 344(f) (1), R.C.P. We also note a different result may have been reached had the Uniform Commercial Code been in effect at the time this action accrued. See sections 554.2315, 554.2711, 554.2714, and 554.2715, Code of 1966.

■ III. The question of whether there was a breach of warranty, express or implied, is largely a question of fact. Reed v. Bunger, 255 Iowa 322, 333, 122

N.W.2d 290; Farmers State Bank v. Cook, 251 Iowa 942, 946, 103 N.W.2d 704, 706, and citations. Defendant vigorously contends there is conclusive evidence that he relied upon the seller's judgment as to the sufficient strength of this buckle mount. It is true that a buyer may rely on his own judgment as to some matters visible to him, and may rely on the seller's representations as to others. Drager v. Carlson Hybrid Corn Co., Inc., 244 Iowa 78, 84, 56 N.W.2d 18, and citations. It is also true that when he does so and the seller is, or should be, aware that reliance is placed upon an erroneous judgment, a breach of warranty results. But this only means that a fact issue is presented as to whether such a judgment was given and whether it was relied upon. Generally, this requires a submission of that question to the trier of fact. In this instance such evidence was submitted to the finder-of-fact and it found no misrepresentation, no reliance, and no warranty. In view of that finding, we must also affirm the judgment denying defendant recovery upon his cross-appeal.

IV. Although considerable space in both briefs and arguments was devoted to the issue of damages referred to in the trial court's original conclusions of law, due to the view we take of this appeal, that issue is not reached. There being no breach of warranty, of course there could be no damage as a result thereof. Thus, we give no consideration to the issue of consequential damages.

. V. The trial court entered judgment for defendant in the sum of $400, apparently in an attempt to make him whole under the original agreement, even though such relief was not specifically demanded in his answer or counterclaim.

■ This court is limited to errors assigned, and we have often said that unless assigned errors are argued they are deemed waived. Best v. Yerkes, 247 Iowa 800, 811, 77 N.W.2d 23, 60 A.L.R.2d 1354, Parkhurst v. White, 254 Iowa 477, 481, 118 N.W.2d 47. Also see Braden v. Board of

Supervisors, Iowa, 157 N.W.2d 123, filed March 5, 1968; Associates Discount Corp. v. Held, 255 Iowa 680, 684, 123 N.W.2d 869.

We find no complaint of this part of the judgment in cross-appellant's appeal, and the correctness of it is not challenged in its brief and argument. There being no assigned error and no argument as to the correctness of the judgment granting restitution of the $400 previously paid on account, the judgment of the trial court must be affirmed. Costs are to be taxed two thirds to appellant and one third to cross-appellant.

Affirmed.

GARFIELD, C. J., and SNELL, MOORE, STUART and RAWLINGS, JJ., concur.

MASON and LeGRAND, JJ., dissent.

BECKER, J., takes no part.