IVA M. JOHNSON, Appellee, v. FARMERS INSURANCE COMPANY, Appellant.

INSURANCE: Policy in General—Oral Applications—Agent's Neglect to Forward—Resulting Damage. An insurance company which, directly or indirectly, authorizes its agent to solicit oral applications for insurance in definite amounts, and to receive the premiums on the contemplated policies, is liable for the damages resulting from the *negligent* act of the agent in failing to forward such an application and the premium to the company, and in inducing the applicant, without *negligence* on his part, to actually believe that a policy had been issued.

PRINCIPLE APPLIED: The uniform practice of an insurance agent was to take *oral* applications for insurance and to collect the premium for the contemplated policy and thereafter to prepare a *written* application, to which he himself signed the name of the applicant. The company, with full knowledge of the method pursued by the agent, uniformly issued policies on such applications. A property owner, who had knowledge of the particular method pursued by the agent, gave said agent, on his solicitation, an oral application for insurance for three years, and in a definite amount, and at the same time paid the premium to the agent. It was then agreed that the agent would keep the policy in his safe, as a matter of safe-keeping. The agent did not forward the application or the premium to the company. The applicant, in good faith, supposed that a policy had been issued, and that the agent had it in his safe. Some two and a half years later, the applicant's property was destroyed by fire. He then discovered for the first time that the application and the premium had never been forwarded to the company, and that no policy had ever been issued. The applicant brought action against the company, basing it upon the absence of negligence on his part and upon the charge of negligence on the part of the agent. The jury found in favor of the applicant on these issues. *Held*, the verdict was correct.

INSURANCE:   Agents—Ostensible and Actual Authority.   The plea
2, 4 that an applicant for insurance must be held to know that he could not obtain a policy through a mere *soliciting* agent, without the execution of a written application, must fail when it appears beyond question that the company had uniformly allowed such agent to send in applications prepared *by himself*, and had, with equal uniformity, issued policies thereon.

INSURANCE:   Contract in General—Negligent Failure to Issue—
3   Evidence.   On the issue whether an applicant for insurance was guilty of contributory negligence in the matter of the non-issuance of a policy, it may be shown that the company's agent had promised the applicant to keep said policy in his (the agent's) safe, as a matter of safe-keeping.

INSURANCE:.  Agents—Ostensible and Actual Authority.
2, 4

INSURANCE:   Agents—Agent Acting for Both Insurer and Insured.
5   The failure of an insurance agent to notify an applicant for insurance that no policy had been issued, when the applicant had every reason to suppose that it had been issued, is the failure of the company, even though the agent had promised the applicant

to act for him in retaining the policy for safe-keeping, after it was issued.

ESTOPPEL: Equitable Estoppel—Mistaken Action Induced by 6 Wrongful Conduct. One whose wrongful conduct has led his antagonist into mistakenly planting his right to recover on an untenable ground, may not, on the plea that he has been to great expense in preparing his defense to the untenable claim, prevent his said antagonist, after discovering such wrongful conduct, from shifting his claim to a tenable ground.

PRINCIPLE APPLIED: An insurance agent, with the full approval of his company, had long pursued the practice of taking oral applications for insurance, immediately collecting the premium, and later, himself preparing a written application, without the actual signature of the applicant. Plaintiff knew of the method pursued by the agent. He gave the agent an oral application for $3 800, and at once paid the premium. The agent agreed to keep the policy in his own safe. The agent never sent the application or the premium to the company. Plaintiff, in good faith, supposed the policy had been issued, and that the agent had it in his safe. Loss occurred. Plaintiff made claim to the company on the basis *that a policy had been issued.* Later, on discovering the wrongful conduct of the agent, plaintiff changed his claim, and based it *on negligence resulting in the non-issuance of the policy.* Defendant pleaded that it had been to great expense in preparing defense to the first claim. *Held,* plea of estoppel could not be entertained.

APPEAL AND ERROR: Harmless Error—Excluding Evidence of 7 Admitted Fact. Harmless error results from excluding evidence of a fact alleged in an answer and admitted in the reply.

PLEADING: Matters Specially Pleadable—Adjudication. A former 8 adjudication must be specially pleaded, in order to admit evidence relevant thereto.

APPEAL AND ERROR: Presumptions—Non-Showing as to Con- 9 tents of Exhibits. The exclusion of offered exhibits will not be denominated error, when the record is bare of any showing of the contents of the exhibits.

LIMITATION OF ACTIONS: Negligence—Negligent Failure to Is- 10 sue Insurance Policy. An action based on *negligence* resulting in the non-issuance of a policy of insurance, with resulting damages, may be brought at any time within the two-year period provided by Sec. 3447, irrespective of the time which would have been provided in the policy, had one been issued.

**APPEAL AND ERROR:**    Abstract—Contradictions—Presumption.
11   It is suggested, in case appellant's own abstract reveals a flat
     contradiction as to whether exceptions were taken to the in-
     struction prior to its submission to the jury, that the appellate
     court will treat the record as showing no exceptions.

**TRIAL:**    Verdict—Excessiveness.    When the excess part of a ver-
12   dict can be determined by a mere matter of mathematical calcu-
     lation, the verdict will be affirmed, with the proper modifica-
     tion. .

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

### JULY 1, 1918.

### REHEARING DENIED OCTOBER 18, 1918.

ACTION at law to recover damages on account of neg-
lect of defendant's agent. Verdict and judgment for plain-
tiff, and defendant appeals. The material facts are stated
in the opinion.—*Modified and affirmed.*

*Deacon, Good, Sargent & Spangler* and *Dawley, Jordan
& Dawley,* for appellant.

*Rickel & Dennis, C. W. Kepler & Son,* and *C. J. Lynch,*
for appellee.

WEAVER, J.—The plaintiff's original petition alleged
that, on June 11, 1911, she was the owner of certain de-
scribed property in the city of Lisbon, Iowa, and for many
years had kept the residence building and
contents thereof insured in the defendant
company; that, on June 25, 1906, she pro-
cured from the defendant a policy of insur-
ance on said property for a period of five
years; ·that, by inadvertence, at · the ex-
piration of said period, the policy was not immediately re-
newed, but a short time thereafter, to wit, July 20, 1911,
one Runkle, who was the defendant's agent, notified plain-

*1. INSURANCE:
policy in gen-
eral: oral ap-
plications:
agent's neglect
to forward: re-
sulting dam-
age.*

tiff's husband, E. A. Johnson, that the policy had lapsed,
and solicited a renewal thereof; and thereupon, plaintiff's
husband, acting·in her behalf, and Runkle, acting for the
defendant, orally agreed upon the issuance of a policy of in-
surance for the sum of $2,800 on the dwelling house, $1,000
on its contents, and $700 on the house. She further al-
leges that the agent made a minute of the data necessary
for him to have in order to report the transaction to the
company and to obtain the policy thereon, and promised
that said insurance should be made effective for three years
from twelve o'clock, noon, of that day; and the said E. A.
Johnson, on the same day, and in consideration of such
promised insurance, paid to said agent the agreed premium
thereon. It is further alleged that, at the time of this
transaction, the agent suggested that he had a fireproof
safe, which he used· for the safe-keeping of policies, and
that, if permitted, he would deposit the plaintiff's policy
there, when received from the company; that, relying up-
on said agent to make the proper report to the company
and secure the issuance of a policy, and believing that this
had, in fact, been done, and that the property was duly in-
sured, according to the agreement, she made no further in-
quiry about it until, on February 15, 1914, her said dwelling
and its contents were destroyed by fire, when she discov-
ered that said agent had negligently failed to report the
transaction to the company, and did not, in fact, procure
the issuance of a policy. Notice of loss was immediately
given to the defendant, which denied liability, on the
ground that no policy had been issued to her. Thereupon,
this action was begun, to recover damages to the amount of
the insurance which had been agreed upon with defendant's
agent, and paid for as above alleged.

Thereafter, plaintiff filed an amended and substituted
petition, stating the alleged facts with more particularity;
and among other things, she averred that said agent was

duly authorized by defendant to solicit insurance from property owners and collect premiums on such insurance, and to receive from defendant for its patrons the policies issued by it; that the agent, with the knowledge and consent of the defendant, had customarily himself prepared the applications for policies, and forwarded same without the signature of the applicants, except as written thereon by himself; and that defendant had recognized his authority so to do, by accepting such applications and issuing policies thereon; and that this custom and manner of the agent in doing business were also known and relied upon by plaintiff's husband and agent, and in such reliance, the premium was paid. The plaintiff further alleges that the failure to transmit the premium to the company and to procure the issuance of the promised policy was occasioned by the negligence of defendant's agent, and without negligence on her part; and that, because thereof, she has suffered damage, to the amount of the insurance which had been agreed upon.

Answering the claim thus stated, defendant denied that any policy was ever issued to the plaintiff, or that it ever agreed or undertook to issue such policy, or became in any manner liable to her on account of the loss of the property. It is further pleaded that, immediately after the fire, plaintiff, claiming to have been insured, notified defendant of her loss, and asked for blanks on which to make formal proof thereof. In the same notice, plaintiff stated that the property was insured about August 1, 1911, but that the policy was not in her possession. Because of the giving of such notice and the making of such claim, defendant says it relied upon the fact that no policy had been issued as a sufficient defense, and therefore denied all liability, and employed counsel and incurred expense to sustain such defense; and that plaintiff is, therefore, estopped to assert any claim for a recovery of damages arising from

the negligence of defendant's agent.  There was a trial to a jury, resulting in verdict and judgment for the plaintiff for the full amount of her claim.

Before taking up the several assignments of error argued by appellant, it will clarify the situation to mention certain matters of fact disclosed by the record.  There was evidence from which the jury could find that, in July, 1911, W. H. Runkle was the defendant's agent in the town of Lisbon, and had transacted business as such with the plaintiff or her husband, who acted as her agent; that, as agent for the defendant, Runkle had solicited many property owners in that vicinity to insure their property with the defendant, and had collected the premiums therefor; that it was his uniform practice not to require such property owners to sign written applications for the insurance desired, but, having obtained the data required, he himself filled out the applications and signed the names of the property owners thereto, adding to each of such signatures the words "By W. H. Runkle;" that the applications thus made and signed were regularly accepted by the defendant, and policies issued thereon; that said agent and his manner of doing such business were well known to the plaintiff, or to her husband, who represented her in said matters; that said agent personally solicited the renewal of said insurance, and entered into an agreement with plaintiff's husband to procure a policy for her, as alleged in the petition, and obtained the necessary data to enable him to report the transaction to the company, and received the premium to be paid for such insurance.  The jury could properly have found, also, that, at the time when the premium was paid, Runkle said he would deposit the policy, when received, in his safe, where it would be securely preserved; but that, in truth, he neglected to report to the defendant said application or agreement for a renewal of the insurance, or to turn over to defendant the premium

collected thereon by him; and that, by reason of such neg-
lect, no policy was, in fact, ever issued.

Numerous other facts, of more or less relevance, are
either admitted or find support in the testimony; and, so
far as the same may appear necessary to the proper dis-
position of the appeal, they will be hereinafter mentioned
more specifically.

I.    The first proposition argued for appellant is, in sub-
stance, that plaintiff could not rightfully expect a policy
to be issued to her through Runkle, who was no more than
a soliciting agent, until she had signed an
application therefor; and, if she relied up-
on Runkle to fill the application and sign
her name thereto, he was, in such respect,
her agent, and not the agent of the com-
pany; and in such case, the company is not liable for the
consequences of his neglect.

2. INSURANCE:
agents: osten-
sible and ac-
tual author-
ity.

But nothing is claimed for the plaintiff, as we under-
stand the situation, because of Runkle's failure to sub-
scribe her name to an application. The evidence as to his
manner of doing business, and of the company's acquies-
cence therein by its issuing policies on his reports with
forms of application made and signed by himself, shows
a voluntary waiver by the company of the necessity of any
written application by the property owner. If it saw fit
to do business on that basis, and issue policies upon risks
so solicited and obtained, it is not in position to plead, in
avoidance of liability so incurred, that its agent was, in
any respect, acting as agent for the property owner. There
is no magic in the mere name "soliciting agent," "record-
ing agent," or "general agent." Our statute provides that
every person who shall, in any manner, directly or indi-
rectly, transact business for any insurance company, is the
agent of such company (Code Sections 1749, 1750). The
scope and extent of his authority is shown, not merely by

reference to his title or to his written commission or credentials, but by the business which he is permitted to do and perform, and does do and perform, in the company's name, or by its apparent acquiescence and consent. His act in that behalf is the company's act, and his neglect with respect to such business is the company's neglect. It

3. INSURANCE:
contract in general: negligent
failure to issue: evidence.

may well be possible that, in so far as concerns Runkle's promise to deposit the policy in his safe when it was received from the company, it was his individual undertaking, and that, had he received and held the policy, he would not, as such depositary or bailee, be considered the representative of the company; but the fact of such promise would, nevertheless, be competent testimony on the question of a delivery of the policy so received, and, where the policy is not issued, or not received, and the company or its agent is charged with negligence in that respect, evidence of that promise would also be admissible upon the question of plaintiff's contributory negligence.

II. Counsel say that the company could not, itself, have lawfully subscribed plaintiff's name to the application, and, therefore, could not authorize Runkle to do so,

4. INSURANCE:
agents: ostensible and actual authority.

or ratify his act in doing it. All this may be admitted, without conceding that it has any material application to the case now before us. There is nothing in the law which prohibits an insurance company from issuing a policy without formal written application of any kind, or upon the written or oral report of its agent; and if, as the jury could fairly find from the evidence, the appellant had adopted a course of business in which its agent, Runkle, was authorized to solicit insurance without taking written applications from the property owner therefor, and to collect the premium thereon in advance, and had been accustomed to issue its policies upon Runkle's report of such

business, without any accompanying written applications,
or to issue them upon applications showing upon their
face that they had not only been filled out by Runkle, but
signed by the names of the property owners, also written
by Runkle, it cannot be heard to deny its liability in this
action merely because plaintiff concedes that she signed no
written application for the insurance which she says was
agreed upon with the agent, and for which she paid the
stipulated premium. That such was the manner and method
of business between the appellant and its agent and their
patrons generally, is shown without substantial dispute.
The records of the company subpoenaed into court show
that Runkle was an active agent, securing numerous risks
for the appellant in and about the town of Lisbon, and
that, without exception, these policies were issued without
written applications, except such as were signed by Runkle
himself. More than 200 such applications, so prepared by
him, during the two-year period covering the time in ques-
tion, and on which appellant had issued policies, were ex-
hibited in court. Under such circumstances, the precedents
relied upon by appellant, which emphasize the distinction
between a soliciting agent and agents having a wider scope
of authority, are not controlling on this appeal. If the
authority actually given the agent, or the authority which
the appellant apparently permitted him to exercise, was
such as to justify the plaintiff in agreeing with him upon
the terms of insurance, paying him the premium thereon,
and relying upon him to report the same to his company,
either orally or with an application made by himself, and
to obtain for her a policy embodying such agreement, and
he failed and neglected to report such agreement to the
appellant, or to transmit to appellant the premium col-
lected, and failed to notify plaintiff of the true situation,
and she, as a person of ordinary care and prudence, was
led to believe, and did believe, that the insurance for which

she had paid had been duly effected, then the negligence ot the agent is chargeable to the appellant, and plaintiff may recover her damages.    See *Duffie v. Bankers' Life Assn.*, 160 Iowa 19; *Northwestern M. L. Ins. Co. v. Neafus,* 145 Ky. 563; *Boyer v. State F. M. H. Ins. Co.,* 86 Kans. 442.

III.   It is argued that, even conceding that recovery may be had from an insurance company for damages caused by the negligence of a soliciting agent, it must first appear that plaintiff has done all that she is required to do; and that, to use the language of counsel, "inasmuch as a written application was required, with the name of applicant signed thereto, then, until such application had been signed by herself or by her agent, she has not done all which was required by her and she is not entitled to a verdict."   What we have already said concerning the alleged necessity of a written application, duly signed, sufficiently covers this exception; and it is sufficient here to say that the objection is without merit.

The further point is made that Runkle's agreement, if any, to receive and hold the policy on deposit for the plaintiff, was not within the scope of his authority as appellant's agent, and in that respect he must

5. INSURANCE: agents: agent acting for both insurer and insured.

be considered as plaintiff's agent; and that his failure to notify her that no policy had been issued, was negligence only with respect to his agency for her, and not with respect to his agency for the company.   The premises thus laid down may, for the purposes of this case, be admitted, but the conclusion as stated does not follow.   The duty to notify plaintiff, if defendant refused to issue the policy for which she had paid, was one which the company, or Runkle, as its agent, was bound to perform with reasonable promptness, without any reference whatever to the agreement of Runkle to hold the policy on deposit for her. Neither he nor the company for which he acted could take

her money in payment of the agreed premium, and, without notice of a refusal to insure, and without offer to return the money, escape liability, merely because she did not appear and demand action on their part before the loss occurred.

IV.   Defendant's plea of estoppel is to the following effect: When the loss occurred, plaintiff, as we have said, gave notice of it to the defendant, and asked for blanks upon which to make formal proofs. In the same connection, the notice stated that the policy was not in plaintiff's possession, but the fact that the property was insured and the premium paid was without question, and she demanded payment accordingly.

6. ESTOPPEL:
equitable es-
toppel: mis-
taken action
induced by
wrongful con-
duct.

The original petition, as recited in our preliminary statement, set out, with considerable fullness, plaintiff's alleged dealing with the company through Runkle, the agreement upon a policy of insurance, the payment of the premium, Runkle's promise to report to the company and procure the issuance of a policy, plaintiff's reliance on said promise, Runkle's negligence with respect thereto, his failure to return the premium paid, and the loss of the property by fire, and demand for judgment for the damages so sustained. The amended and substituted petition restated such alleged facts, expanding the statement somewhat, to include a more detailed recitation of the facts concerning the negotiation, and dealing with Runkle as the defendant's agent, and the defendant's method and manner of doing business by and through Runkle. In both the original and substituted petitions, it is alleged that the amount of insurance agreed upon was $3,800, and that the loss of the property by fire exceeded that amount; and in each, there is a prayer for $3,800, with interest.

It is the theory of appellant that the notice given to it by plaintiff, immediately after the fire, indicated that the

claim so made was upon an alleged right to recover upon a policy or contract of insurance, and that, relying upon such notice as a true statement of the nature of plaintiff's demand, and upon the fact that no policy had been issued, defendant denied all liability to the plaintiff, and employed counsel and incurred expense in preparing such defense; and that, by reason of these facts, the plaintiff is estopped to claim or have a recovery in this action for damages on account of the agent's negligence. The claim to recover upon the latter ground is said by counsel to be a material "change of front" by the plaintiff, and that such change will not be allowed, to the defendant's prejudice.

In support of this defense, appellant offered in evidence the written notice given by plaintiff to defendant soon after the fire; but, on plaintiff's objection to its materiality, and because the matter sought to be shown constituted neither a defense nor an estoppel, the offer was denied; and this ruling is assigned as error.

7. APPEAL AND ERROR: harmless error: excluding evidence of admitted fact.

If we were to hold the evidence competent, there would be no prejudicial error in the ruling. The notice had been pleaded and set out by the defendant *in haec verba* in its answer, and plaintiff in her reply had specifically admitted it, all of which was already before the jury. We further hold that there was no prejudice in the ruling, because, for reasons hereinafter stated, we are clear that said notice or letter to the company does not constitute a ground of estoppel.

In further support of the plea of estoppel, it is said that, prior to the commencement of the action, the plaintiff commenced another action against defendant in the superior court of Cedar Rapids, in which (as we understand the statement in argument) she sought to recover judgment against defendant for this same loss or damage, but had withdrawn or dismissed her action be-

8. PLEADING: matters specially pleadable: adjudication.

fore the same was submitted. In this same connection, defendant called as a witness the clerk of the superior court, who produced a "package of papers" said to be "the files in the case of Iva M. Johnson v. Farmers Insurance Co.," and identified the petition, amendment to petition, answer, amendment to answer, and original notice in such proceeding, and offered the several papers in evidence. Plaintiff's objection to these exhibits as incompetent, irrelevant, immaterial, and as showing no estoppel or defense to plaintiff's present action, was sustained. Of this ruling, also, complaint is made. The proceedings in the superior court were not pleaded either as a defense or prior adjudication, or as ground of abatement. Indeed, the fact that any such suit had even been begun in any court is nowhere shown or suggested in the record, until it more or less vaguely or inferentially appears in the introduction of the defendant's evidence; and the exclusion of the testimony may well be sustained on the theory of its entire irrelevancy. Moreover, the several papers in question are offered simply by name, without anything by which this court can say that their contents did or did not have any material bearing upon the issues in this case. In the absence of any showing in this respect, the ruling below will be presumed to be right.

9. APPEAL AND ERROR: presumptions: non-showing as to contents of exhibits.

The trial court appears at first to have held that the alleged estoppel was well pleaded; but, before the case was submitted, reached the conclusion that nothing was shown on which the jury could properly find that an estoppel had been established. In this there was no error. Assuming, as we must for the purpose of this appeal, that plaintiff had arranged in good faith with Runkle, as appellant's agent, for insurance upon her property, and had paid him the premium thereon under the circumstances shown by the testimony in her behalf, it is putting it very

mildly to say that it ought not to be held, as a matter of law, that she could not reasonably rely upon said agent to perform his agreement, or reasonably understand and believe that a policy had been issued to her; and if, on the day following the fire, still acting on the understanding and belief that her insurance had been so perfected, she notified defendant of the loss, and stated her claim that the property had been so insured, and demanded payment of her damages accordingly,—at the same time disclosing the fact that the policy for which she had contracted was not in her possession,—it would be an extraordinary example of the sacrifice of justice to technicality to say that if, on close examination into the situation, it should be developed that the agent had neglected his duty to report the matter to the company, or the company, being notified, had, through some oversight, failed or neglected to issue the policy, the plaintiff was, nevertheless, estopped to demand her rights in the premises because, in her letter to the company, she had demanded payment of insurance, instead of damages for failure to insure. No precedent cited in argument goes to this extent, or even approaches it. There is no necessary inconsistency between the claim stated by plaintiff in her notice of loss and that which she asserts in her pleadings in this case. She admits at the outset that she has no policy to exhibit; she does not allege that she ever personally received or had such policy in her possession; but she does say that she paid for such insurance, and is entitled to the indemnity thus purchased. And if we assume, as we must, the truth of the case made by her on the trial, she was insured, in the very substantial sense that she was entitled to be made whole by the company, whether it be called a contract, indemnity, or damages for the failure of the agent to furnish the policy or to return her money with a refusal to insure. If, as she claims, and as her testimony tends to show, she was misled into the

belief that the insurance had been perfected, and that she was entitled to demand payment as upon a contract of indemnity, her mistake in this respect was occasioned by the defendant itself, or by the conduct and representations of its agent in the transaction of its business; and it would be a striking perversion of legal principle which would permit the defendant to make use of such mistake, induced by its own agent, to escape liability for her loss. *Duffie v. Bankers' Life Assn.*, 160 Iowa 19; *Boyer v. State F. M. H. Ins. Co.*, 86 Kan. 442 (121 Pac. 329). It is not conceivable that appellant suffered any prejudice or injury because of the form of plaintiff's notice of loss.

V.   Defendant also pleads and argues that the form of policy which would have been issued to plaintiff, had her insurance been perfected, contained a provision barring action thereon if suit were not begun within one year after her loss; that her right to bring this action for damages because of the agent's negligence is subject to the same limitation; and, as this action was not begun within the year, her right to maintain the same is barred.

10. LIMITATION OF ACTIONS: negligence: negligent failure to issue insurance policy.

As sustaining this proposition, special reliance is placed upon *Barre v. Council Bluffs Ins. Co.*, 76 Iowa 609, and *Green v. Liverpool & L. & G. Ins. Co.*, 91 Iowa 615, which decisions, in turn, cite and apply the rule followed in *Smith v. State Ins. Co.*, 64 Iowa 716, and *Hubbard v. Hartford Fire Ins. Co.*, 33 Iowa 325. In each and all of these precedents, action was brought to recover indemnity upon an alleged oral contract of insurance (except, perhaps, in the *Barre* case, where the petition declared upon an oral contract to issue a policy); but in none was there any suggestion of a claim to recover damages for negligence. It was, therefore, very properly held that, if the agreement to insure or to issue a policy was to be treated as a contract

of insurance, the court would presume, in the absence of evidence to the contrary, that the policy so contemplated was in the usual form then being issued by the company for the insurance of such risks, and that the conditions therein provided would be applicable to the contract sued upon. All this may be correct; but it does not follow that, because an action upon the policy, had one been issued, or upon an oral agreement of insurance would have been barred, the same limitation must be applied to an action to recover damages for the neglect of appellant's agent to effect a contract of insurance, either written or oral. The parties are in accord upon the proposition that there was no contract of insurance. Plaintiff's claim is that the defendant's agent, acting within the apparent scope of his authority, undertook to obtain such a contract and provide her with insurance, but negligently failed so to do; and she demands recovery, not because she was insured, but because she was not insured, and because her want of protection in this respect is due to the neglect of the defendant's agent. Generally speaking, an action to recover damages on account of negligence may be brought at any time within the statutory period of two years (Code Section 3447); and, in the absence of any showing bringing the case within any of the exceptions to that provision, it is not within the province of the court to abbreviate the period so fixed.

VI. Appellant criticizes several of the paragraphs of the court's charge to the jury. The appellant's abstract at this point is contradictory and confusing. It is there shown that, upon hearing the defendant's motion for new trial, the court made and entered its ruling as follows:

11. APPEAL AND ERROR: abstract: contradictions: presumption.

"Though opportunity was given, no exceptions were taken to the court's instruc-

tions, and the motion for new trial is overruled, and judgment confirmed."

So far as we are able to ascertain from the abstract, this ruling and record have never been changed or amended. In an earlier portion of the record, there is, however, a statement of objections to parts of the court's charge, purporting to have been made before such charge was read to the jury. In our opinion, upon the record as it stands, this court could properly treat the case as one in which there is no exception to the court's charge; but we have examined the objections which are said to have been raised before it was read to the jury, and find that, in all essential respects, such objections are controlled by the conclusions we have already announced, and no reversible error appears in the paragraphs of the charge which are there challenged.

Of exceptions taken to rulings on the admission of testimony, it may also be said that such rulings are, for the most part, sustained by our view of the law as hereinbefore expressed. Moreover, the "propositions relied upon by the appellant for a reversal," in so far as they relate to these rulings, are entirely too general in form, and fail to disclose the error which counsel had in mind in framing the assignment.

VII. The verdict is said to be excessive, even upon plaintiff's own theory of her case. It appears that the insurance for which she arranged with Runkle included the sum of $1,000 upon the contents of the dwelling. In proving the amount of her actual loss, she testified to having listed the articles of personalty so insured, and fixed their aggregate value at $813.75. The verdict of the jury indicates quite clearly that a recovery was allowed for a sum equal to the entire amount of the contemplated insurance, including $1,000 on the contents of the house. The verdict is, therefore, in excess of the damages which

12. TRIAL: verdict: excessiveness.

plaintiff would be entitled to recover on any theory of h r case, to the amount of $186.25 and interest thereon at the rate of 6 per cent from the date of the loss until the date of the judgment below.

For the reasons hereinbefore stated, the cause will be remanded for modification of the judgment as above indicated, and as so modified, will stand affirmed. One fourth of the costs of the appeal will be taxed to the appellee, and all other costs taxed to the appellant.—*Modified and affirmed.*

PRESTON, C. J., GAYNOR AND STEVENS, JJ., concur.