C. A. FILLGRAF, Appellee, v. FIRST NATIONAL INSURANCE COMPANY of America, Appellant.

No. 42299.

SEPTEMBER 18, 1934.

REHEARING DENIED JANUARY 19, 1935.

Sullivan, McMahon & Linnan, and G. C. Murray, for appellant.

Cornwall & Cornwall, and H. E. Narey, for appellee.

MITCHELL, C. J.—A few days before the Fourth of July, 1931, a young American boy, whose name does not appear in the record, filled with enthusiasm and the desire to demonstrate his patriotism like boys of his age at that time of the year, entered a drug store which had a large display window filled with fire crackers and other explosives used to awaken the patriotism of the people of this country on the Fourth of July. In some way or other, no doubt by crowding or pushing, the young boy came close to the display window. Whether it was a lighted match, a piece of punk, or a torpedo he dropped into the window, probably never will be known. But, before the fire that followed was extinguished, the business section of the beautiful city of Spencer was practically destroyed, and out of this fire arose the case which is now before us.

The First National Insurance Company of America, the appellant in this case, is an insurance company, engaged in the writing of fire and tornado insurance, and was duly authorized to transact insurance business in the state of Iowa. It had as its general agent for the territory, including Iowa, one Arthur Cobb, whose offices were located at Omaha, Nebraska. C. H. Tyrrell was a resident of Spencer, Iowa, and was duly appointed local agent for the appellant company early in 1930 by the general agent. After his appointment, there was forwarded to Tyrrell by the insurance company a box containing twenty or twenty-five fire insurance, tornado, and combined policies, together with forms, indorsements, and blanks such as are used in writing policies. The policies were the usual Iowa form, signed by an officer of the company, with a blank space for the agent to sign when the policy was issued. According to Tyrrell's testimony,—and it is not contradicted,—at the time he received the blank policies and supplies he received a letter from the insurance company, stating he could figure contracts of insurance, and issue policies and indorsements, and make remittances to the company of the amounts of premiums he collected. He also received a certificate from the insurance commissioner of the state, stating that he was appointed agent of the appellant company.

Tyrrell's office was also located in one of the buildings destroyed by the fire, and all of the papers and blank policies were destroyed. Some time after the fire, he received a request from the appellant company to return the policies to the company, but, as they had been destroyed in the fire, he could not do this and made an affidavit that they were lost.

In April of 1930 Tyrrell solicited the appellee, who was a practicing dentist in Spencer, and who had his office in one of the main buildings of the city. The appellee agreed to take an insurance policy with appellant company for a period of twelve months, from May 5, 1930, to May 5, 1931. No formal application was prepared. Tyrrell, however, took the necessary information and sent it to Cobb, the general agent, and asked him to send out the policy. Cobb prepared the policy and sent it to Tyrrell. The policy was in the usual form, and stated, among other things, "issued at its Spencer, Iowa, agency, Clarence H. Tyrrell, Agent". Tyrrell delivered the policy to the appellee, and received the full premium from Dr. Fillgraf in the amount of $38.70. However, Tyrrell did not send in the premium to the company at that time. On August 27, 1930, the general agent, Cobb, wrote a letter to appellee, advising that the company had elected to cancel the policy in five days, and directed him to apply to Tyrrell for return premium, if any. The appellee immediately took the matter up with Tyrrell, and asked why the policy was being canceled, and Tyrrell stated to him that he had not sent the premium to the company, but promised he would see that it was paid within five days. Tyrrell did write to the general agent on September 6, 1930, with reference to delay in remitting the premium, and at that time inclosed his check for the amount which was due the insurance company. But, unfortunately, the check was not honored. About December 4, 1930, the appellant company received from Tyrrell's father remittance for the premium which was due, and wrote a letter to the appellee, stating that the policy had been reinstated and that it was in full force and effect. As soon as Dr. Fillgraf received the letter, advising him that the policy was in force, which letter was received on or about December 4, 1930, he went to Tyrrell and asked why this policy had been canceled from the first part of September until the first part of December, and was told by Tyrrell that it had been canceled during that time because he (Tyrrell) had not sent the premium to the company, and on account of the fact that the ap-

pellee had no insurance during that time the policy was automatically extended after May 5, 1931, for the length of time it had been canceled, and this would and did give to the appellee extended insurance for approximately three months, because Dr. Fillgraf had paid for the full year of insurance, and would receive such extension. At the time that Dr. Fillgraf received the letter from the company, on or about December 4, 1930, informing him that the policy had been reinstated, that letter referred him back to the letter which he had received on or about the 1st of September, which letter referred him to Tyrrell to see about the return premium. Tyrrell never reported to the appellant company or its general agent the conversation he had, wherein the insurance was extended for a period of three months. The company records show, both at the office of the general agent and at the home office, that the policy was canceled on September 3, 1930, and was reinstated on December 4th. The fire occurred on June 27, 1931. After the fire, the appellee reported it to Tyrrell, who then informed the appellant company which company immediately denied liability.

The appellee commenced an action against the appellant company, asking first that the policy be reformed and corrected by inserting therein the correct legal description of the premises; that the policy be further reformed and corrected by inserting in lieu of the expiration date of May 5, 1931, the date of August 6, 1931; that the cause be docketed on the equity side of the calendar for the purpose of making such corrections, and, when the same were so made, that the cause be transferred to the law side of the calendar for trial of the law questions involved. The appellant company filed a motion to transfer the case to equity, and, upon order of the court, the case was transferred to the equity side of the calendar and tried as an equitable case. The insurance company filed an answer, denying that it was indebted to the appellee in any amount, and specifically denied that C. H. Tyrrell was the representative of the insurance company or that he was authorized to represent the insurance company in the city of Spencer except as a soliciting agent, and denied that there was any holding out to the public that Tyrrell was anything more than the soliciting agent of the insurance company. The amount claimed by the appellee was $2,999, with interest and costs. The case was tried to the court. The court found in favor of the appellee and against the insurance company, and entered a decree, reforming the policy as prayed for, and entered

judgment against the insurance company in the amount of $2,700, together with interest from September 1, 1931, and the costs of the action. It appears that both sides were dissatisfied with the finding and decree of the lower court, and both have appealed. The insurance company, having perfected its appeal first, is designated as the appellant.

We will consider first the appeal of the insurance company, the appellant in this court.

■ The first and important question in this case to decide is whether or not Tyrrell was a soliciting agent or a recording agent. It is the contention of the appellant that Tyrrell was only a soliciting agent, and, while they cite many errors, most of them rest upon the question of whether or not Tyrrell was a soliciting or a recording agent.

We are impressed with the words of the late Justice Weaver in the case of Johnson v. Farmers Ins. Co., reported in 184 Iowa 630, on page 637, 168 N. W. 264, 266:

"There is no magic in the mere name 'soliciting agent', 'recording agent', or 'general agent'. Our statute provides that ever person who shall in any manner, directly, or indirectly, transact business for any insurance company is the agent of such company. * * * The scope and extent of his authority is shown, not merely by reference to his title or to his written commission or credentials, but by the business which he is permitted to do and perform, and does do and perform in the company's name, or by its apparent acquiescence and consent. His act in that behalf is the company's act and his neglect with respect to such business is the company's neglect."

Code section 9002 of the 1931 Code is as follows:

"9002. 'Soliciting agent' defined. Any person who shall hereafter solicit insurance or procure application therefor shall be held to be the soliciting agent of the insurance company or association issuing a policy on such application or on a renewal thereof, anything in the application, policy, or contract to the contrary notwithstanding."

Code, section 9004, is as follows:

"9004. Agent—specific definition. Any officer, agent, or representative of an insurance company doing business in this state who may solicit insurance, procure applications, issue policies, adjust

losses, or transact the business generally of such companies, shall be held to be the agent of such insurance company with authority to transact all business within the scope of his employment, anything in the application, policy, contract, by-laws, or articles of incorporation of such company to the contrary notwithstanding."

These sections were under consideration in Cooper Wagon & Buggy Co. v. National B. F. Ins. Co., reported in 188 Iowa 425, 431, 176 N. W. 309. There the defendant sought to deny liability on the ground that a rider was later attached to the policy, permitting additional insurance when the agent knew that additional insurance was being carried in companies not authorized to do business in the state. In its discussion of the authority of the agent to bind the company, the court, on page 436, said:

"The plaintiff was a foreign company. It secured the right to do business in the state of Iowa. It had a right to do business in the state of Iowa. It placed the agent here to transact that business for it. He was in every sense the general agent of the company, with authority to transact its business in the state of Iowa. It was a corporation. It can act only through agents. Its agents are its hands, its eyes, its feet. What its agent does in respect to the matters committed to his charge is the act of the company, and binds the company just as effectually as though the company were a living and breathing entity, with power to act for itself, and acted. * * * All it can know must come to it through this avenue, and the knowledge of its agents is its knowledge. The act of the agent, within the scope of his authority, is its act."

Considering the facts in this case in the light of the cases cited, this insurance company sent to Tyrrell twenty-five blank policies. For what purpose were these policies sent, if not for the purpose of being issued by Tyrrell? They authorized him to collect the premiums. True, the only policy that Tyrrell wrote was the one upon which this lawsuit is based, and it is also true that Tyrrell did not draw up the policy in his office. But it seems to us immaterial as to the number of policies that Tyrrell had written. If he was the agent of the appellant company, with authority to write policies, it matters not whether he had written a great many or only this one. But the appellant argues that Tyrrell did not write this policy. It is true that the mechanical part of making out the policy was done in the office of the general agent at Omaha, but it is inter-

esting to note that the policy itself recites that it was issued at the Spencer, Iowa, agency of the appellant company, C. H. Tyrrell, agent. In view of the fact that the company forwarded to Tyrrell blank policies, twenty or twenty-five in number, policies that were ready to be issued upon the signature of Tyrrell as the agent of the company; and in view of the fact that the policy that was issued specified that it was issued at the Spencer, Iowa, office of the appellant company, C. H. Tyrrell, agent; in view of the fact that Tyrrell was authorized to collect premiums and did collect the premium from the appellee in this case; in view of the fact that, when the company canceled the policy, it wrote to the appellee, directing him to see Tyrrell about the return premium, the company cannot now, after a loss has occurred, come in and say that Tyrrell was not the recording agent of this company; that he did not have authority to issue this policy and was merely the soliciting agent of the company. The appellant argues that, even if Tyrrell was a general agent or recording agent, Tyrrell had no apparent authority to bind the appellant by the agreement extending the insurance to August, 1931. The very recent case of Northwestern Mutual Life Insurance Company v. Steckel, reported in 216 Iowa 1189, 250 N. W. 476, has discussed at length "implied" and "apparent" authority. On page 1195, the court said:

"There is a distinction pointed out and recognized by the authorities between 'implied' and 'apparent' authority. 'Implied' authority is actual authority, circumstantially proved; while 'apparent' authority is not actual authority, and may often be authority not actually possessed by the agent, but is such as the principal holds the agent out as possessing.

"In the case of Nertney v. National Fire Ins. Co., 199 Iowa 1358, on page 1361, 203 N. W. 826, 827, this court said: 'Implied authority is said to be actual authority circumstantially proved—the authority which the principal intended the agent to possess. Apparent authority is not actual authority, but is such as the principal holds the agent out as possessing.'

"And in the same case our court quotes from the United States Supreme Court case of Union Mut. L. Insurance Co. v. Wilkinson, 13 Wall. (80 U. S.), 222, 20 L. Ed. 617, as follows: 'The powers of the agent are, prima facie, coextensive with the business intrusted to his care, and will not be narrowed by limitations not communicated to the persons with whom he deals.'

"In 2 C. J., p. 564, section 206, the general rule is announced as follows: 'Where the third person has ascertained the general character or scope of the agency, he is authorized to rely upon the agent having such powers as naturally and properly belong to such character, and, in the absence of circumstances putting him upon inquiry, is not bound to inquire for secret qualifications or limitations to the apparent powers of the agent.'

"This quotation is cited with approval in Boylan v. Workman, 206 Iowa 469, 474, 220 N. W. 49, 51, and, in addition thereto, that case uses the following language: 'The inquiry of a stranger in dealing with an agent must be to ascertain whether or not such person is an agent, and in general, the character of that agency, but when that has been ascertained, not by what the alleged agent may say or do, but by what the principal has done, then the stranger has a right to rely thereon. And even though the agent, in such event, be a special one, yet the stranger has a right to rely upon that person having such authority under the special agency as the principal has "apparently" given him.' "

Thus applying the rule laid down to the case at bar, we find that the appellant company had appointed Tyrrell as its agent at Spencer, Iowa. It forwarded to him blank policies and forms, a policy register, and a certificate from the state of Iowa to do business, and all things that were necessary to represent it at Spencer, Iowa. Tyrrell solicited the policy from the doctor. When that policy was issued, there was noted on the policy the fact that it was issued at the appellant's office at Spencer, Iowa, and that Tyrrell was the agent. Tyrrell had authority to issue policies; he had authority to collect premiums. He did collect from the appellee premium in this case, the full amount required by the company for the policy to run for one year. When on September 3, 1930, the appellant company wrote to the appellee and told him the policy was canceled, without giving any reason for such cancellation, the company directed the appellee to see Tyrrell about his return premium. The doctor did exactly what the company told him to do. He went to see Tyrrell, and Tyrrell informed him the premium had not been sent in, but that he would send it in immediately. During the next three months the record shows there was correspondence between the company and Tyrrell in regard to the payment of the premium. Finally, Tyrrell's father sent in the premium, and the company on or about the 1st of December wrote the appellee, informing him

that the policy had been reinstated, and referred him to the letter which he had received on or about the 1st of September, which informed him that the policy was canceled and which directed him to see Tyrrell. The doctor did just what the company told him to do; he went to Tyrrell the early part of December; and Tyrrell told him that the premium had not been sent in until December, and that the policy would be extended for a period of three months.

But the appellant now argues that the policy was never legally canceled, and that, if a loss had occurred between September 3d and December 6th, the company would have been liable. We do not find it necessary to pass upon the question of whether or not the company would have been liable during the three months' period. The company was asserting is nonliability by declaring the contract at an end. The record shows clearly that in the home office of the company it was considered canceled as of September 3, 1930, and that it was reinstated December 4, 1930. To permit the insurance company now to say that such was not the fact, as against the appellee, who relied upon the representations of the agent, would be to perpetrate a fraud upon him and make him bear the burden of the agent's wrong. The correspondence as shown by this record throws a great deal of light upon the apparent powers of the agent. The insurance company issued the policy without receiving the cash premium its agent had collected. It gave notice of cancellation on August 27th because it had not received the premium. It did not tell the doctor that he had not paid the premium and gave no reason for canceling the contract, but told him to see Tyrrell to secure the return premium, if any. The doctor was not a lawyer, and cannot be blamed for taking the company's declaration of cancellation at its face value. He assumed the cancellation was complete and that the policy would not be reinstated until Tyrrell remitted to the company the amount due. The company notified the doctor to see Tyrrell, and Tyrrell certainly had at least apparent authority to discuss the subject of cancellation with the doctor. The appellee was kept in ignorance of the true reason that caused the company to cancel the policy. There then follows considerable correspondence between Tyrrell and the company, in which the company was trying to secure the payment either of the earned premium, which was the amount due up to the time that the company had canceled the policy, or of the full year's premium so that the policy might be reinstated. The company even threatened,

if the earned premium of $9.44 was not paid, they would report it to the insurance commissioner of the state of Iowa. Finally, the premium was paid, but for three. months the policy was considered canceled by the company. When it was reinstated, the company sent a letter to Dr. Fillgraf. In this letter was the statement, "Cancellation effective date 9-3-30; effective date of reinstatement 12-4-30." And in this same letter Dr. Fillgraf was referred to the former letter, received about the 1st of September, 1930, to see Tyrrell. The doctor did see Tyrrell and Tyrrell there and then told him that the company had agreed to extend the policy for a period of three months, to wit, the period that the policy had, in the eyes of the company, been canceled. At that time the appellee had a legal right to demand a return of his money during the period when the company said he had no insurance. He waived this right to demand a refund because of the agreement that his insurance would be extended so as to give him protection until August 5, 1931. He accepted the reinstatement of the contract which he believed and which the company then believed had been terminated and of no effect during the preceding three months, relying on the information from the company and the statements made by its duly authorized agent Tyrrell. If the appellant now is permitted to change its position, it will result in damage to the appellee, and enable the appellant to take advantage of its own acts. This the appellant is estopped from doing. In the case at bar, Tyrrell was the recording agent, with authority to speak for the company. The appellee does not ask to change or modify the policy, but to continue on the same property, in the same way, and only to give to him protection for the period of time that he paid for, to wit, the period of one year. This he certainly is entitled to.

The appellee appealed from the judgment and decree of the lower court, fixing the amount of recovery at $2,700, with interest at 6 per cent from September 1, 1930. We have carefully reviewed the evidence covering the question of the amount of appellee's loss, and we find no error in the finding and decree of the lower court in the amount fixed by it, to wit: the sum of $2,700, with interest at 6 per cent from September 1, 1930.

Judgment and decree of the lower court must be, and it is hereby, affirmed.

EVANS, STEVENS, CLAUSSEN, ANDERSON, KINTZINGER, and DONEGAN, JJ., concur.