**SUN INSURANCE OFFICE, LIMITED,**
a corporation, Appellant,

v.

**Chet L. GONCE, Appellee.**

**No. 13441.**

United States Court of Appeals
Ninth Circuit.

June 24, 1955.

Griswold, Vargas & Bartlett, Alex A. Garroway, Reno, Nev., for appellant.

Stanley H. Brown, Reno, Nev., for appellee.

Before HEALY and ORR, Circuit Judges, and WALSH, District Judge.

WALSH, District Judge.

Appellee (hereinafter called "Gonce"), a citizen of Nevada, recovered judgment below against appellant (hereinafter called "Sun"), a citizen of the Kingdom of England, for the sum of $10,-714.28, with interest, for a fire loss sustained by Gonce and claimed by him to

have been insured against by Sun's policy of insurance Number 594763. Viewing the evidence in a light most favorable to appellee, as we must, the material facts of the case are:

Policy Number 594763 was originally issued on November 5, 1947, by Sun, through its general agent Garrett Insurance & Realty Company, Reno, Nevada, to Byron Samuel and Fred W. Kirske, doing business as Broadcasting Station KXXL, the insureds named in the policy, and when issued it covered the equipment contained in the broadcasting station, to the amount of $15,000.00 for the term of three years from November 5th, 1947. The issuance of the policy was handled by one Bevan, a partner in the Garrett Company, and he caused the policy to be countersigned with the Garrett Company's name as agent, so as to place its terms and provisions into effect. Shortly after the policy was issued, payment of the premium thereon was financed by Samuel under an invoice contract agreement with the Garrett Company, which contract the latter assigned to the Security National Bank, Reno, Nevada (hereinafter called "Bank"). The result of the financing arrangement was that Bank remitted to Sun in full the premium on the policy, for the account of Samuel, and Samuel stood indebted to Bank for the money advanced, to be paid in installments subject to the terms of the invoice contract. By the terms of the invoice contract, Samuel agreed not to assign the policy without either paying to Bank the balance then due on the contract or furnishing to Bank a written assumption by the assignee of any unpaid balance; and Samuel agreed, further, that if he should default for ten days in the payment of any installment due under the contract, such default would be deemed an election on his part to cancel the policy and Bank would be authorized to notify Sun of such cancellation. Sun had notice of Bank's advance of the funds used to pay the premium on policy Number 594763.

On April 15, 1948, Samuel advised Sun's agent, Garrett Company, by letter that Station KXXL was ceasing operations on April 30, 1948, and that, accordingly, it desired policy Number 594763 cancelled. In accordance with this request, cancellation of the policy was effected by Sun, acting through the Garrett Company. On May 15, 1948, Bank wrote Sun at San Francisco stating that Samuel was in default in his payments on the premium loan and requesting that the policy be cancelled and the unearned premium be returned to Bank. The unearned premium of $354.60 was returned by Sun, through the Garrett Company, and paid to Bank on June 30, 1948.

Some time after May 1, 1948,[1] Gonce acquired from Samuel and Kirske the ownership and possession of Station KXXL and the equipment insured under policy Number 594763. In connection with delivery of possession of the station and equipment to Gonce, there was turned over to him a bundle of insurance policies, including policy Number 594763. At the time Gonce received the policies he requested one Peterson, a Reno insurance agent, to advise him whether it would be less expensive to have policy Number 594763 transferred to him or to acquire a new policy covering the equipment. Peterson suggested that the transfer of policy Number 594763 would be the more economical procedure and, with Gonce's consent, telephoned Mr. Bevan about the possibility of effecting such transfer. Bevan assured Peterson that the transfer could be accomplished by Garrett Company's issuance of an indorsement form transferring the policy to Gonce and expressed appreciation to Peterson for the opportunity afforded Garrett Company to retain the business. Some conversation was had between Bevan and Peterson about Gonce's assuming the invoice contract with Bank covering the premium and paying the balance then remaining due thereon but there was no understanding that such assumption

1. Though the testimony of the several witnesses as to this date varies widely, it would appear that a date between June 20 to June 25, 1948, is approximately correct.

must be accomplished before policy Number 594763 was transferred to Gonce.

In the telephone conversation, Peterson requested Bevan to prepare an indorsement transferring policy Number 594763 to Gonce as the insured. Bevan complied with this request immediately and, a few days later, Peterson called at the Garrett office and obtained the indorsement from a clerk in the office. The indorsement, which was a standard form denominated Form 16A, was executed by Bevan for the Garrett Company as Sun's counter-signing agent, and it recited that Gonce "is hereby recognized as the insured under the below-numbered policy in place and stead of Byron Samuels and Fred W. Kirske". The indorsement provided, also, that by accepting it Gonce agreed that he would, upon demand, pay to Sun all premiums under the policy then due or which might thereafter become due. Upon obtaining the indorsement, Peterson attached it to policy Number 594763 and delivered the policy to Gonce.

Bevan learned of the delivery of the indorsement Form 16A to Peterson on the day that it occurred, but he did not then nor at any time prior to the fire loss raise any question with either Peterson or Gonce as to the effectiveness of the indorsement to transfer the coverage of policy Number 594763 to Gonce. Following the return of the policy to him, and prior to the fire loss, Gonce had some dealings with Bank looking toward his assumption of the premium invoice contract but the assumption was never consummated. A fire which occurred on November 4, 1948, damaged the equipment described in policy Number 594763 and Gonce presented a proof of loss under the policy to Sun. Upon refusal of Sun to pay the loss, Gonce instituted suit on the policy in the court below. The trial court found that policy Number 594763 was in effect at the time of the loss, that by virtue of the issuance and delivery of the indorsement Form 16A Gonce was, at the time of the loss, recognized by Sun as the assured under the policy, and that the coverage of the policy had been transferred to Gonce by Sun's agent without payment of premium and on credit. Judgment was entered in favor of Gonce and against Sun in accordance with those findings.

■■ Appellant's first contention is that since policy Number 594763 was cancelled pursuant to the request of Samuel, it could not be revived, reissued or assigned to Gonce without the consent of the original insureds, Samuel and Kirske, or the Bank, which consent was never obtained. But the fact that the policy had been cancelled as to the original insureds and the Bank did not produce the result that the same numbered policy could not be used, together with the indorsement Form 16A, to express a new contract of insurance between Gonce and Sun. The cancellation terminated all interest of the original insureds and the Bank in the policy, and after such cancellation the sole right of the original insureds and the Bank against Sun was to the return of the unearned premium on the policy. Obviously, therefore, neither the original insureds nor the Bank could be affected by the use of the numbered policy and the indorsement Form 16A to constitute an insurance contract that involved only Sun and Gonce. Whether the result of the dealings between Sun and Gonce be denominated as a "revival", or "reissuance", or "reinstatement" of policy Number 594763, the fact remains that what the parties actually did was to enter into a new agreement whereby Sun, in consideration of Gonce's agreement to pay the premium, contracted to insure Gonce against loss by fire to the equipment located in Station KXXL. The parties expressed that agreement, precisely and completely, by the execution and delivery to Gonce and his acceptance of the indorsement Form 16A, which made reference to policy Number 594763. Sun and Gonce needed no consent from the original insureds or the Bank to contract in this manner.

■ What has just been said disposes of an additional contention of appellant that Gonce could not obtain any rights under policy Number 594763 except by assignment from the original insureds.

This contention might require consideration if Gonce claimed rights derived from the original insureds, but that is not the situation here. The rights of the original insureds in the policy terminated on cancellation and Gonce's claim arises wholly and solely out of his dealings with Sun's general agent.

Sun next contends that the Garrett Company could not, without specific authority, reissue or assign policy Number 594763 to Gonce; and that, since there was no evidence that such specific authority had been granted by Sun to the Garrett Company, Sun was not bound by Garrett's transactions with Gonce. Sun cites several cases as supporting its position, but a reading of them discloses that each involves either a special agent, with the limited authority possessed by such a representative, or an attempt by an agent to accept a risk which had been theretofore rejected by his principal to the knowledge of the proposed insured, or a combination of those features.[2]

In this case, however, Garrett Company was a general agent of Sun. Sun Insurance Office of London v. Mitchell, 1914, 186 Ala. 420, 65 So. 143, 145; Appleman on Insurance, Vol. 16, Sec. 8691, p. 101. The Garrett Company had authority on its own initiative to accept risks for Sun; it had authority to issue policies and bind Sun by filling out and countersigning the blank forms which had been furnished it for that purpose; and, as demonstrated by the action it took on Samuel's request, it could cancel policies for Sun. As a general agent it could bind Sun by any act, agreement, or representation that was within the ordinary scope and limits of the insurance business entrusted to it. Union Mutual Ins. Co. v. Wilkinson, 13 Wall. 222, 80 U.S. 222, 234, 20 L.Ed. 617; Viles v. Prudential Ins. Co. of America, 10 Cir., 1938, 96 F.2d 3, 7; United States Quarry Tile Co. v. Massachusetts Bonding & Ins. Co., 6 Cir., 1934, 71 F.2d 400, 402; Cronin v. Coyle, 1925, 6 Cal.App.2d 205, 44 P.2d 385, 388; Lattner v. Federal Union Ins. Co., 1945, 160 Kan. 472, 163 P.2d 389, 392; 44 C.J.S., Insurance, § 150, p. 823. See Fillgraf v. First National Ins. Co., 1934, 218 Iowa 1335, 256 N.W. 421; Scheiderer v. National Union Fire Ins. Co., 1952, 333 Mich. 676, 53 N.W.2d 580. The contract Garrett Company made with Gonce for Sun, and the assurance it held out to Gonce that the issuance and delivery of indorsement Form 16A accomplished his protection against loss or damage to his equipment by fire, were clearly within the scope of the business which Sun empowered Garrett Company to carry on for it.

Sun's final point is that there was no insurance contract with Gonce because there was no delivery of indorsement Form 16A by Bevan to Peterson. It is true that Bevan testified that it was his understanding with Peterson that Gonce would accomplish the assumption of the invoice contract for the premium before coverage would be effected and that delivery of the Form 16A to Peterson by the clerk in the Garrett Company office was unauthorized. But other evidence in the case, e. g., the testimony of Peterson, the provisions of Form 16A binding Gonce to pay the premium on demand, and the undisputed fact that Bevan never attempted to cancel the indorsement form during the months that passed between its delivery to Peterson and the occurrence of the fire loss, amply supports the finding of the trial court that indorsement Form 16A was delivered and that credit was extended to Gonce for the payment of the premium.

The judgment of the court below is affirmed.

---

2. Typical of the cases is Hastalis v. Firemen's Ins. Co., 117 W.Va. 211, 185 S.E. 419. The court supplied its own syllabus of the holding in that case in the following language: "Authority of a special agent to revive a canceled policy already rejected by the company cannot be presumed."